In re Hershel L. COWSERT and Catherine A. Cowsert, Debtors.

ELGIN STATE BANK, Plaintiff,

v.

Hershel L. COWSERT, Catherine A. Cowsert and Herbert Freehling, Trustee, Defendants.

Bankruptcy No. 81–00056–BKC–JAG. Adv. No. 81–0089–BKC–JAG–A.

United States Bankruptcy Court, S. D. Florida.

Aug. 14, 1981.

Allen M. Anderson, South Elgin, Ill., Neil J. Berman, Miami, Fla., Schaffner & Castillo, Elgin, Ill., for plaintiff.

Gerry L. Dondanville, Pompano Beach, Fla., for debtors.

Reggie David Sanger, Fort Lauderdale, Fla., for trustee.

Herbert Freehling, Fort Lauderdale, Fla., trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary proceeding came to trial on the first count only of plaintiff Elgin *State* Bank's complaint. That count seeks relief from the automatic stay of 11 U.S.C. § 362(a) so that Elgin State may continue with its state court foreclosure action against a condominium unit owned by the debtors.

Another complaint to lift stay, Adversary Case No. 81–0159–BKC–JAG–A, tried shortly after this case, was filed by Elgin *National* Bank, another creditor. Both cases involve the same set of creditors and debts, and were tried by the same counsel. Although these cases did not take long to try, and appear relatively simple at first glance, the court's traversal through them has been studded by legal land mines, as difficult new issues revealed themselves in later memoranda of the parties and in the court's own research. Subsequent to both trials, the court called a conference to discuss issues not addressed at the trials. These Findings and Conclusions address the ultimate positions taken by the parties.

Debtors Herschel L. Cowsert and his wife Catherine A. Cowsert were formerly residents of Illinois. In October, 1979, debtors purchased a condominium unit at 1450 Plymouth Road, Elgin, Illinois, known as Unit 505, Tyler Towers, and received a deed to that property, including an easement for ingress and egress (Exhibit D attached to Debtor's Schedule A–2). A purchase money first mortgage in the principal amount of $42,400 was given by the Cowserts to Elgin State (Plaintiff's Composite Exhibit No. 2). Thereafter, in January, 1980, the property was deeded to a pre-existing land trust, of which Elgin *National* Bank was the trustee. (Plaintiff's Composite Exhibit No. 3).

The land trust had been created in 1976, and the Cowserts' former residence, a home at 3869 Hopps Road, Elgin, Illinois, had been deeded to the land trustee before the condominium was purchased by the Cowserts. (Exhibit No. 1 to Deposition of William Westerman, Plaintiff's Exhibit No. 4). Home Federal Savings and Loan held a first mortgage on the Hopps Road house. (Exhibit A to Debtor's Schedule A–2).

After the addition of the condominium to the land trust, the Cowserts made a collateral assignment of their beneficial interest in the trust (an "ABI"), to secure a loan they received from Elgin *National* Bank in the principal amount of $71,535 (Plaintiff's Composite Exhibit No. 3). A UCC financing statement was filed in Illinois on Janu-

ary 14, 1981, (Exhibit No. 4 to Deposition of William Westerman, Plaintiff's Exhibit No. 4).

In September, 1980, a junior assignment of the same beneficial interest (Plaintiff's Composite Exhibit No. 3,) was given by the Cowserts to Elgin *State* to secure a previously unsecured loan in the principal amount of $25,000 (Exhibit G to Debtor's Schedule A–2). There was no evidence of any UCC financing statement being filed for this transaction.

On debtors' schedules B–1 and A–2, the Tyler Towers property was listed as having a value of $55,000, although at his deposition, (Plaintiff's Exhibit No. 1, p. 5) Herschel Cowsert testified that its value was $63,000 to $64,000. In his deposition, Jan George Hervert, an expert for plaintiff, referred to the value as $61,000, but gave no supporting data because the deposition primarily related to the Hopps Road property (Plaintiff's Exhibit No. 6, p. 14). The only evidence of the current outstanding mortgage balance was debtors' Schedule A–2, which lists the mortgage debt as $43,000. Schedule A–2 lists the debt secured by the ABI to Elgin National as $71,535. William Westerman of Elgin National testified that as of May 22, 1981 the balance due on debtors' note was $89,992.62 (Plaintiff's Exhibit No. 4, p. 13). Finally, Schedule A–2 lists the balance on the ABI to Elgin State as $18,000.

The debtors moved to Florida in the latter part of May, 1980 (Plaintiff's Exhibit No. 1, deposition of Herschel Cowsert, p. 3). On January 16, 1981, they filed their joint voluntary petition in bankruptcy under chapter 7.

■ Plaintiff seeks a lifting of the stay pursuant to 11 U.S.C. § 362(d)(2) which provides that relief shall be granted if:

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

All agree that subsection (B) is satisfied because in a chapter 7 case, there is no reorganization. Plaintiff further contends that subsection (A) is also automatically satisfied in a chapter 7 proceeding because all non-exempt property belongs to the trustee on behalf of the estate and the debtor's ownership is terminated. Plaintiff argues that if the *trustee's* equity were the issue, § 362(d)(2) would have been so phrased by Congress. Plaintiff cites no case applying this interpretation of the statute, but relies on the section's plain wording. The court has considered this imaginative and resourceful argument by the plaintiff, but concludes that it has no merit. Such reasoning would require relief from stay in all chapter 11 cases as well, because in reorganization cases the "debtor-in-possession" is not the same legal entity as the "debtor". Such an interpretation would moot subsection (B), would render the automatic stay provisions of the Bankruptcy Code virtually meaningless, and is not in keeping with what this court discerns to have been the Congressional intent.

■ Elgin State additionally contends that under the conventional interpretation of § 362(d)(2), it must prevail because the debtors, in fact, had no equity. One of plaintiff's alternative positions is that the debtors had no equity in the real property itself because the land trustee holds title to the real estate, and the debtors had, at most, a beneficial interest in the land trust. The court admits that this is a troubling issue. Counsel have not directed the court's attention to, and the court has not found any cases applying § 362(d)(2) in this context.

Illinois courts have repeatedly upheld the right of parties to, in effect, transform what traditionally has been an interest in real estate into a personal property interest, through the use of the land trust device.[1] E. g. *Horney v. Hays*, 11 Ill.2d 178, 142

---

1. For those of us in jurisdictions providing less exposure to the Illinois land trust, two articles providing a useful introduction to the concept and its use in secured financing are:

Kenoe, *Land Trust Financing and the Uniform Commercial Code*, 52 Chi.Bar Rec. 419 (1971) and *Fein and Seils, Loans to Be Secured By an Assignment of the Beneficial Interest in a Land Trust*, 55 Chi.Bar Rec. 165 (1974).

N.E.2d 94 (1957). The parties in this case have not asserted that the land trust was a fiction and the collateral ABI's, in actuality, mortgages. And under the Illinois cases they would probably not be deemed such. Nevertheless, this court cannot ignore the practical fact that the debtors held a "beneficial equity" in the real property akin to the interest of a debtor mortgagor. It conflicts with the entire concept and purpose of the Congressional automatic stay to conclude that a foreclosure of a first mortgage on such real property is not stayed because of the land trust device which put the debtors at one remove from the property, and *without* legal title to it. Such a result would also place mortgagees such as Elgin State in a position far superior to other similar mortgagees under the Bankruptcy Code, simply by virtue of the unique state law coupled with the coincidence of a debtor's subsequent utilization of the land trust device. Therefore this court concludes that, for purposes of applying § 362(d)(2), it should consider the debtors' "beneficial equity" in the real property.

■ In calculating that "beneficial equity", the converse problem also arises. There is no encumbrance directly on the real property except the first mortgage because the ABI's are collateral assignments of a personal property interest only, the debtors' interest in the *trust*. However, the real property which is the principal of the trust would ultimately be affected, (although the legal procedures by which the creditors may obtain the property differ from those in a foreclosure). It would be unfair to plaintiff, and equally derogatory to the intent of § 362(d)(2) not to consider the debts secured by the ABI's in calculating the debtors' equity in the real property.

Looking now at those ABI's, the trustee asserts that they were not properly perfected and that therefore they are not encumbrances to be included in calculating the debtors' equity. Without that reduction of the debtors' equity, the trustee asserts, plaintiff cannot meet the requirements for the lifting of the automatic stay. This court agrees with the trustee.

■ Under Illinois law, which deems the beneficial interest in a land trust to be personal property, when that interest is given as collateral the transaction is governed by Article 9 of the Uniform Commercial Code and such an interest has been held to be of that type of collateral classified as a general intangible. Ill.Rev.Stats. ch. 26, § 9–106, *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425 (1968). When a loan secured by this type of collateral is in default, the secured party, (assignee of the beneficial interest,) may exercise its rights under the UCC. Generally a non-judicial sale is sufficient, and the purchaser of the beneficial interest, whether it is the secured party or another bidder, may exercise the owner's rights under the land trust agreement, and thus obtain the real property (Kenoe, at Footnote No. 1).

In Florida a beneficial interest assigned for collateral purposes would also be a general intangible, and governed by the UCC. Fla.Stats. § 689.071(4) provides that the interests of beneficiaries shall be deemed to be personal property where the recorded deed or trust instrument so defined the interests. Here the Cowserts' deed in trust to Elgin National (Plaintiff's Composite Exhibit No. 3) and the Trust Agreement executed in 1976 (Exhibit No. 1 to Deposition of William Westerman, Plaintiff's Exhibit No. 4) so provided. By the terms of Fla. Stats. § 679.106, such an interest would be a general intangible for purposes of UCC Article 9.

When it comes to perfection, however, the laws of Illinois and of Florida differ. Under UCC 9–302, the filing of a financing statement in the appropriate office is required for perfection of a security interest, with certain enumerated exceptions. Prior to the 1972 amendments, the official uniform text included no exceptions applicable to ABI's, and Illinois and Florida therefore both required the filing of financing statements. The 1972 amendments added an exception at 9–302(1)(c) for "a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate". That amendment was adopted by

the Illinois legislature without change, codified at Ill.Rev.Stats. ch. 26, § 9–302(1)(c). It has been held that:

> ... by the explicit terms of Section 9–302(1)(c), it is not necessary to file such a statement to perfect a security interest in that class of "general intangibles" consisting of all beneficial interests in land trusts.

*First Federal Savings and Loan Association v. Pogue,* 72 Ill.App.3d 54, 27 Ill.Dec. 588, 389 N.E.2d 652, 656 (1979), leave to appeal den. 79 Ill.2d 610 (1979).

■ Florida, on the contrary, adopted a modified form of the amendment, and excepts only "a security interest created by an assignment of a beneficial interest in a decedent's estate". Fla.Stats. § 679.302(1)(c). Thus in Florida it continues to be necessary to file a financing statement in order to perfect a security interest in a beneficial interest in a land trust.

■ Both Florida (the forum state) and Illinois have adopted the UCC choice of law provision at Fla.Stats. § 679.103(3)(b), and Ill.Rev.Stats., ch. 26, § 9–103(3)(b):

> The law (including the conflict of laws rules) of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of the security interest.

Applying this section, it is clear that Florida law governs the perfection of Elgin *State's* ABI in September, 1980, because the Cowserts were clearly residents of Florida at that time.[2] Since there was no financing statement filed, Elgin State loses its priority to the trustee, and is unsecured for purposes of calculating the debtor's equity.

■ The ABI to Elgin *National* Bank raises a slightly more complicated issue. The Cowserts were residents of Illinois at the time that transaction was completed, and the Illinois law having been amended, Elgin National's security interest was perfected at its inception without filing. However, Fla.Stats., § 679.103(3)(e), made applicable by 9–103(3)(b), provides:

> A security interest perfected under the law of the jurisdiction of the location of the debtor is perfected until the expiration of 4 months after a change of the debtor's location to another jurisdiction, or until perfection would have ceased by the law of the first jurisdiction, whichever period first expires. Unless perfected in the new jurisdiction before the end of that period it becomes unperfected thereafter and is deemed to have been unperfected as against a person who became a purchaser after the change.

To preserve its perfection, Elgin National was required to perfect in Florida, that is, to file a financing statement in Florida within four months after the Cowserts moved to Florida. This it did not do, and it also must be treated as unsecured for purposes of calculating the debtors' equity.

While the non-uniform amendment to the Florida UCC may create a trap for unwary lenders in Illinois who have taken, as collateral, a Florida debtor's beneficial interest in a land trust, the application of the law is straightforward.

Plaintiff asserts that this entire review of Uniform Commercial Code law is moot because Elgin National is excepted from the perfection requirements of the UCC. Relying on *Matter of Estate of McGaughey,* 60 Ill.App.3d 150, 17 Ill.Dec. 260, 376 N.E.2d 259 (1978), plaintiff states that Elgin National, being the land trustee as well as a creditor, had absolute ownership of the real property at the instant it made its loan to the Cowserts, and was at that time more than secured—the full complete owner—without any need for the execution of the ABI, much less perfection of that ABI, or any type of foreclosure. In its view, the ABI was mere "frosting on the cake". The court fails to understand how such a merger of interests could occur without at least

**2.** Plaintiff did not specifically request that the court consider this ABI in calculating the debtors' equity, because the debt to Elgin National would more than eliminate the debtors' equity, without reaching this subordinate interest.

However, because the court concludes that the Elgin National loan does not reduce the debtors' equity, this debt has been considered as an alternative reduction of the debtors' equity in applying. § 362(d)(2)(A).

an assignment to the land trustee-creditor of the debtors' beneficial interest. Since that assignment did occur, however, the court might find merit in plaintiff's ultimate position without giving credence to its more extreme views.

In this case, though, the court concludes that Elgin National could not bypass UCC procedures and claim direct and full ownership of the trust *res*, simply because it was the land trustee, whatever the Illinois law might be in the context of probate class priorities (the issue in *McGaughey*). Elgin National could hardly claim this full, merged ownership of the real property if its loan to the Cowserts had been repaid. And even plaintiff concedes that Elgin National only has such ownership in the real estate to the extent of the loan balance, with the Cowserts retaining a beneficial interest to the extent the real property value exceeds the debt. This is illogical. Either Elgin National has complete, undivestable ownership or it doesn't. Obviously it doesn't. It is simply a secured party, with the right to retain the collateral upon the debtors' default if it follows the proper procedures. In this case it did not take all the necessary steps (filing in Florida) to secure its priority above the trustee.

Taking even the lowest value ascribed to the condominium, $55,000, and the balance of Elgin State's first mortgage, $43,000, there is clearly equity remaining above the secured indebtedness. The requirements of 11 U.S.C. § 362(d)(2) have not been satisfied and the stay will not be lifted to permit plaintiff to proceed with its foreclosure in state court.

Pursuant to Bankruptcy Rule 921(a), a separate Final Judgment incorporating these Findings and Conclusions is being entered this date.