**In re LOOP HOSPITAL PARTNER-SHIP, an Illinois Limited Partnership, Debtor.**

**Bankruptcy No. 83 B 4169.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

June 18, 1985.

Frank O. Wetmore, II, Rosalind B. Hebert, Winston & Strawn, Chicago, Ill., for Mid-City Bank.

J. Barton Kalish, J. Barton Kalish & Associates, Larry M. Wolfson, Jenner & Block, Richard J. Cremieux, Joyce & Kubasiak, Chicago, Ill., for Loop Hosp.

John M. Babbington, Jaros, Tittle & O'Toole, Chicago, Ill., for Talman Home.

Ben D. Schwartz, Altheimer & Gray, Chicago, Ill., for Hugh Michaels.

Richard H. Ferri, Continental Bank, Law Dept., Chicago, Ill., for Continental Bank.

John Collen, Nachman, Munitz & Sweig, Chicago, Ill., for Pioneer Bank.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

Presently before the court are motions for the determination of priorities, pursuant to which the parties have submitted a certain issue for ruling, and various petitions for attorneys' fees submitted by counsel for the debtor-debtor-in-possession ("Loop").

The first question for determination is whether Joyce and Kubasiak ("J & K"), attorneys for the debtor and an asserted secured creditor herein are entitled by virtue of an assignment of the beneficial interest in a certain land trust to priority over certain other creditors who claim prior assignments of the beneficial interest in the same land trust. In the court's view, the resolution of that question requires it to decide two issues. The first is whether under applicable Illinois law, for purposes of determining priority among creditors, an assignment of beneficial interest is perfected upon execution of the agreement between the parties or upon lodging that assignment with the trustee.

The second issue is whether upon equitable principles J & K's claim is entitled to priority even if their security interest was perfected first under Illinois law.

## FACTS

There is no dispute as to the relevant facts. As disclosed by the pleadings, memoranda and exhibits, "Loop" sold its principal asset with court approval on or about August 21, 1984 with liens to attach to proceeds of that sale. Several entities claim liens by virtue of assignments of the beneficial interest in the land trust under which the property was held. In 1982 a group of banks composed of Continental, Mid-City and Pioneer ("the Banks") undertook extensive negotiations with Loop to forebear from prosecuting foreclosure proceedings on the property. From the exhibits on file, it appears that that process was underway at least in May of 1982. The agreements under which the Banks assert their assignments of the beneficial interest were accepted by Loop's representative on July 14, 1982. The Banks lodged their assignments with the trustee on July 15, 1982. J & K has tendered an assignment of beneficial interest executed on July 13, 1982. That document was placed with the trustee on November 15, 1982.

The agreement between Loop and the Banks provides in relevant part:

1. The Borrowers and Guarantors jointly and severally affirm, acknowledge, and admit to and for the benefit of the Banks as follows:

E. Loop Hospital Partnership owns 100% of the beneficial interest ("collateral") under the land trust. The collateral assignment of 100% of the beneficial interest in the Land Trust executed contemporaneously herewith and attached hereto as Exhibit A(2) (the "Security Agreement") has been duly executed and delivered and is intended to grant the Banks a good, valid and enforceable security interest or other encumbrance in such collateral subject only to a prior assignment of 100% of the Beneficial interest in the land to Talman Federal Savings and Loan Association, and said assignment is hereby ratified and affirmed.

F. There are no defenses, claims or setoffs existing which would impair or prevent the immediate collection from the Borrowers or Guarantors of the indebtedness evidence by the Notes referred to in subparagraph A hereof, ... which would impair or prevent the Banks' immediate recourse against the collateral described in sub-paragraph E hereof pursuant to its security interest; to the extent that any such defenses, claims and/or setoffs exist, whether known by the Borrowers of the Guarantors or unknown, they are hereby waived.

G. Neither the Borrowers nor the Guarantors are aware of any facts which with the passage of time or the giving of notice, or both, would ripen into a defense, claim or setoff described in subparagraph F hereof.

The Borrowers and Guarantors jointly and severally intend to be bound by the foregoing affirmations, acknowledgments, admissions and waivers and agree and consent to the admission of any or all of such affirmations, acknowledgments, admissions and waivers in any judicial proceedings.

J & K has argued that their claim is prior to the Banks' because its assignment was

executed one day prior to the Banks'. The Banks have contended that priority among assignments of beneficial interest should not be governed by the Uniform Commercial Code because such an assignment is not a "security interest" and that the date of lodging the assignment with the land trustee should be the relevant date for the purpose of determining priorities. The Banks further assert that the documents represent that there were no prior assignments and that J & K, as attorneys for Loop during the course of the negotiations, were well aware that the documents contained this representation when they executed their assignment one day prior on July 13, 1982. J & K has argued that there is no factual support for the allegation that there was a misrepresentation and furthermore, that J & K should not be held responsible for any representations by Loop.

## DISCUSSION

### I. PRIORITIES.

■ Under the governing Illinois law of land trusts, an assignment of the beneficial interest in a land trust is personal, not real property. *E.g., People v. Chicago Title & Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979); *Levine v. Pascal*, 94 Ill.App.2d 43, 50, 236 N.E.2d 425, 428 (1968). It appears well-settled in Illinois that priority questions involving the beneficial interest in land trusts are governed by the Illinois Commercial Code (UCC). Ill. Ann.Stat. ch. 26, § 9–302 Illinois Code Comment at 154–55 (Smith-Hurd 1982); *First Federal Sav. & Loan Ass'n v. Pogue*, 72 Ill. App.3d 54, 27 Ill.Dec. 588, 591, 389 N.E.2d 652, 655 (1979).

■ Two sections of the Illinois Commercial Code are relevant to the present case. The first of those sets out those instances where filing is required to perfect a security interest and provides in relevant part:

(1) A financing statement must be filed to perfect all security interests except the following:

(c) a security interest created by an assignment of a beneficial interest in a trust or a decedent's estate;

Ill.Ann.Stat. ch. 26, § 9–302 (Smith-Hurd 1982). Prior to 1972, filing had been required. The Illinois Code Comment provides:

This paragraph changes the rule followed in *Levine v. Pascal*, 94 Ill.App.2d 43, 236 N.E.2d 425 (1st Dist.), petition for leave to appeal denied 39 Ill.2d 626 (1968), decided under the pre-1972 text, in which a beneficial interest in an Illinois land trust was held to be a general intangible which could be perfected only by filing. Filing is no longer necessary to perfect a security interest in a beneficial interest in a trust or a decedent's estate.

Ill.Ann.Stat. ch. 26, § 9–302 Illinois Code Comment at 154–55 (Smith-Hurd 1982). This comment indicates, as does Illinois case law, that although filing is no longer required, perfection of an assignment of beneficial interest is nevertheless governed by the Code. *In re Cowsert*, 14 B.R. 335, 339 (Bankr.S.D.Fla.1981); *First Federal Sav. & Loan Ass'n. v. Pogue*, 72 Ill.App.3d 54, 27 Ill.Dec. 588, 592, 389 N.E.2d 652, 656 (1979).

Section 9–303 of the Code recites when a security interest is perfected and provides in pertinent part:

(1) A security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Such steps are specified in Sections 9–302, 9–304, 9–305, and 9–306. If such steps are taken before the security interest attaches, it is perfected at the time when it attaches.

Ill.Ann.Stat. ch. 26, § 9–303 (Smith-Hurd 1982).

In turn, a security interest attaches pursuant to section 9–203(2) when:

(a) The collateral is in possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . ., and

(b) value has been given; and

(c) the debtor has rights in the collateral.

Ill.Ann.Stat. ch. 26, § 9–203(2) (Smith-Hurd 1982).

■ Thus, in the instant case, it appears that since Illinois legislative history and case law determine that perfection of an assignment of the beneficial interest in a land trust is governed by the Illinois Commercial Code, such a security interest is apparently perfected even without provision of notice to third parties. Although this court is somewhat persuaded that perfection should require lodging with the trustee in order to give notice to creditors, it is not prepared to fly in the face of the weight of authority in Illinois on the subject. However, the equities in the present matter do not require the court to do so.

The court notes that section 1–203 of the U.C.C. contemplates that in performance or enforcement of "every contract or duty within this Act [is imposed] an obligation of good faith." Ill.Ann.Stat. ch. 26, § 1–203 (Smith-Hurd). In order to enforce priorities under the Illinois Commercial Code, the court must be satisfied that the party seeking the benefit of the Code's priority scheme behaved in good faith.

A review of the record indicates that the good faith requirement of the U.C.C. and principles of equity mandate that the secured claim of Joyce and Kubasiak be subordinated to all other secured claims in this matter.

*Equitable Subordination*

Section 510(c) of the Bankruptcy Code governs the power of the court to subordinate claims and provides in pertinent part:

Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another claim ..., or

(2) order that any lien securing such a subordinated claim be transferred to the estate.

Ill. U.S.C. § 510(c) (West 1984).

The Supreme Court, in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) articulated the premise that the "bankruptcy court has the power to shift the circumstances surrounding any claim to see that injustice or unfairness is not done to the administration of the bankruptcy estate." The Fifth Circuit has set forth three conditions which must be present before a claim will be subordinated. *matter of Mobile Steel Co.*, 563 F.2d 692, 699–700 (1977). Legislative history to the Bankruptcy Code indicates that case law principles existing at the time the Code was enacted are still applicable. Sen. Rep. No. 95–989, 95th Cong., 2d Sess. 74 (1978), U.S. Code Cong. & Admin.News 1978, p. 5787. Thus the criteria set forth in *Mobile Steel* are presently applicable. Those criteria are:

1. The claimant must have engeged in inequitable conduct;

2. The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

3. Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Mobile Steel*, 563 F.2d at 700. *See also In re Wilnor Drilling, Inc.*, 29 B.R. 727, 730 (S.D.Ill.1983). Although the doctrine of equitable subordination is most frequently applied in situations involving misconduct of corporate officers or directors, it can also be used in other appropriate situations. *E.g., Matter of Pat Freeman, Inc.*, 42 B.R. 224, 231 (Bankr.S.D.Ohio 1984). In the present case, J & K represented Loop during negotiations with the Banks, participated in the preparation and drafting of the agreement and knew when they received their assignment on the 13th that on the following day, July 14, their client would be representing that there were no prior assignments of beneficial interest in the land trust. Taking the assignment after having represented Loop in the negotiations with knowledge of the representations contained in the agreement was inequitable conduct at best.

Second, the Banks' position was obviously harmed by J & K taking the assignment. Additionally, the knowledge which J & K gained as Loop's attorneys certainly gave them an unfair advantage over other creditors. Armed with that knowledge, they were able to obtain a prior collateral assignment of beneficial interest.

Finally, subordinating J & K's secured claim is in no way inconsistent with the provisions of the Bankruptcy Code. The Supreme Court has passed upon the court's power to distribute the estate in accordance with equitable principles notwithstanding the priority scheme set forth in the Code. *Pepper v. Litton*, 308 U.S. at 304–05, 60 S.Ct. at 244.

Although this is a classic case for equitably subordinating the claim of Joyce and Kubasiak, alternatively, they are estopped under principles of equity from asserting that their assignment was prior in time to the Banks'.

*Estoppel*

Estoppel, as set forth by the Seventh Circuit: "arises ... when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party to his prejudice." *Citation Cycle Co., Inc. v. Yorke*, 693 F.2d 691, 695 (7th Cir.1982) *citing Lebold v. Inland Steel Co.*, 125 F.2d 369, 375 (7th Cir.1941), *cert. denied*, 316 U.S. 675, 62 S.Ct. 1045, 86 L.Ed. 1749. This standard has been further detailed as incorporating six elements which are:

(1) words or conduct by the party against whom estoppel is alleged constituting either a misrepresentation or concealment of material facts; (2) knowledge on the part of the party against whom the estoppel is alleged that representations made were untrue; (3) the party claiming the benefit of the estoppel must have not known the representations to be false either at the time they were made or at the time they were acted upon; (4) the party estopped must either intend or expect that his conduct or representations will be acted upon by the party asserting the estoppel; (5) the party seeking the benefit of the estoppel must have relied or acted upon the representations; and (6) the party claiming the benefit of the estoppel must be in a position of prejudice if the party against whom the estoppel is alleged is permitted to deny the truth of the representations made.

*In re Maxwell*, 40 B.R. 231, 239 (D.C.N.D. Ill.1984) *citing Stewart v. O'Bryan*, 50 Ill. App.3d 108, 8 Ill.Dec. 633, 365 N.E.2d 1019 (1977).

In the present case, the agreement contained the representation that there were no prior assignments as of July 14, 1982. Joyce and Kubasiak represented Loop in the negotiation, drafting and execution of that agreement. In equity, the situation is equivalent to one in which the law firm itself had made the representation. Having drafted the representation on behalf of their client, it ill behooves J & K to deny that it was not also their own. Since the firm had itself taken an assignment just one day before, it obviously knew that the July 14 representation that there were no prior assignments of beneficial interest was untrue; and since the assignment to Joyce and Kubasiak was nowhere a matter of record on July 14, the Banks would not have known of it. Hence, the Banks would have had no way of knowing that the statement in the agreement was false. The intent in representing that there were no prior assignments could have been none other than to induce the Banks' reliance thereon to enter into the agreement. The Banks relied upon the representation in executing the agreement. Finally, the Banks' position would be prejudiced if Joyce and Kubasiak were allowed to utilize their knowledge of the ongoing negotiations between their client and the Banks and the schedule for executing the agreement to "sneak through the back door" and take an assignment of beneficial interest to secure their lien for attorneys' fees just one day prior to execution of the agreement with the Banks.

Therefore, even though the J & K's lien was perfected prior to the Banks' lien, they

will not stand prior to the Banks in this Bankruptcy case. The claim of Joyce and Kubasiak is equitably subordinated to those of the Banks as contemplated by section 510(c)(1) of the Bankruptcy Code. The lien securing the claim so subordinated is transferred to the estate in accordance with section 510(c)(2) of the Code.

## II. FEE PETITIONS

Also before the court are fee petitions submitted by the law firms of Jenner & Block and J. Barton Kalish and Joyce and Kubasiak all on behalf of the debtor and debtor-in-possession. Pioneer Bank and Mid-City Bank have objected to fees being awarded from the proceeds of the sale.

### A. *Fee Petition of Jenner & Block and J. Barton Kalish.*

■ Before the court are petitions in which Jenner & Block and J. Barton Kalish request some $108,000 in fees of which $75,754 remains outstanding. The petitioning attorneys highlight the sale of Loop's principal asset at a price which will allow recovery for the objecting banks and the relatively quick resolution of the case as justifications for amounts sought. Mid-City has objected on the grounds that the attorneys are not proper parties to petition for fees under section 506(c), that time spent administering the Chapter 11 proceeding did not benefit the secured creditor under section 506(c), that certain services are duplicative and hence not compensable, and that J. Barton Kalish should be disqualified from the point at which he testified in the case. Section 506(c) of the Bankruptcy Code provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c) (1984).

As set forth in *In re Trim-X*, 695 F.2d 296, 299 (7th Cir.1982), in order to be recoverable under section 506(c) expenses must be reasonable, necessary and of benefit to the secured party. Attorneys' fees for general representation of a debtor may be charged to a secured creditor to the extent which they benefited the secured creditor. *In re Sonoma V*, 24 B.R. 600, 604 (Bankr. App.Pan. 9th Cir.1982).

First, the court chooses not to adopt the minority viewpoint expressed in cases such as *In re Manchester Hides, Inc.*, 11 Bankr. Ct.Dec. 969, 972, 32 B.R. 629 (N.D.Va.1983) and *In re Codesco, Inc.*, 18 Bankr. 225 (Bankr.S.D.N.Y.1982) which indicates that attorneys may not petition for fees under section 506(c). The usual practice is the opposite, even as indicated in cases such as *Sonoma V. See, also* 3 L.King, Collier on Bankruptcy ¶ 506.06 at 51, n. 7a (15th ed. 1985). This court also notes, as did the *Manchester Hides* court that the court has ample equitable powers to award fees in a situation such as the present one.* Therefore, any awards herein are alternatively grounded upon those equitable powers. 11 B.C.D. at 972–73, 32 B.R. 629.

■ The Banks have also argued that all fees for debtors' counsel which are "administrative" are not directly related to preservation and disposition of the Banks' collateral and therefore, are not compensable.

---

\* Relevant equitable factors noted were:

(1) Was there a reasonable expectation of consummating a reorganization plan which would have benefited secured creditors, thus justifying the imposition of charges against them which could not have been imposed in general bankruptcy proceedings? (2) Were the services rendered by those who have been awarded allowances intended primarily to protect the interests of unsecured creditors and the debtor, or was due regard also had for the interests of secured creditors? (3) Did those who have been awarded allowances demonstrate reasonable diligence and competence in bringing the unsuccessful reorganization proceedings to conclusion? (4) Were the secured creditors benefited by anything which was done in the reorganization proceedings? (5) Did the secured creditors request or consent to the bringing of the proceedings, or consent to, or waive objection to, any of the activities of the trustee therein? (6) Were the secured creditors responsible for any delays in connection with the proceedings, or uncooperative in this attempt to formulate an acceptable plan? Id.

As the *Sonoma V* court correctly noted, attorneys' fees for the administration of a case are chargeable to the secured creditor to the extent the creditor benefited from the activities. It is important to note that had this matter proceeded as a foreclosure, only the first mortgage-holder may have recovered.

In the present case, virtually all legal services, including those administrative legal services, furthered the end result of the very sale which produced a return to the Banks. Therefore, the court rejects the notion that debtor's counsel is not entitled to compensation for administering this Chapter 11 case. To deny compensation in such situations would chill the filing of liquidating Chapter 11 plans which can confer substantial benefits upon creditors. This court views thediligent prosecution of a Chapter 11 by competent counsel as benefitting the secured creditor, and will award Jenner & Block and J. Barton Kalish reasonable compensation for so doing.

 Additionally, the court declines to deny further compensation to J. Barton Kalish from the point in time at which he testified in this case. That testimony was for the very narrow purpose of establishing efforts expended in advertising the asset for sale. No party would be prejudiced by his continued representation of the debtor and the court will not disqualify him on that ground.

The court will, however, deny compensation for services which were duplicative. The Banks have pointed out duplicative services in the amount of $15,535.95. In a situation where fees will come from the collateral of the secured creditors, it is especially important for counsel to avoid duplication. Compensation will be denied for services revealed by the time sheets to be duplicative. Therefore after applying the $35,000 retainer already paid, the court hereby awards the firm of Jenner & Block and J. Barton Kalish the additional sum of $57,218.67 and they are authorized to recover that amount from the proceeds of sale of the debtor's real estate.

### B. Fee Petition of Joyce and Kubasiak

 The law firm of Joyce and Kubasiak ("J & K") has requested compensation in the amount of $28,927.56. The Banks have objected to the awarding of any fees to J & K on the grounds that a *nunc pro tunc* order appointing J & K is inappropriate in this case, that J & K is not "disinterested" as required by the Code, that in equity, when determining their position regarding the sale, they had made judgments of whom to support premised upon claims at the time. Thus, it is argued, for the court to upset that balance would be inequitable. The docket sheet reflects that J & K was appointed special counsel by order of this court on June 14, 1983.

The law firm was retained because of its knowledge of the relationships between the partners and its knowledge of claims of third parties. Therefore, any arguments regarding *nunc pro tunc* appointments are moot. However, the order provided that all compensation would be subject to order of this court. Therefore, each objection to the award of compensation must be considered in turn.

The Banks' first objection is that J & K is not "disinterested" as required by section 101(13) of the Code and that, therefore, compensation should be denied.

The court is well aware of its authority and discretion to deny attorneys' fees to J & K in this situation. *See e.g., In re B.E.T. Genetics, Inc.,* 35 B.R. 269, 271 (Bankr.E. D.Cal.1983). The court notes that when J & K was retained, their interests were set forth as a matter of record in accordance with Rule 2014(a) and no party objected at that time to the firm's retention. However, the interests which are a matter of record mandate that the court carefully scrutinize the fee petition and grant compensation only for matters which the court can determine are consonant with the purposes for which the firm was authorized to represent the debtor. The petition requested that they be retained in matters dealing with claims of third parties and which re-

quired knowledge of the relationship between the partners. The time sheets reflect the following time which was clearly spent in those authorized activities:

| | Hrs. | Rate | Amount |
|---|---|---|---|
| J A W | 11.25 | 50.00 | $ 562.50 |
| R J C | 9.5 | 125.00 | $1,187.50 |
| PO | 54.75 | 72.00 | $4,106.25 |
| GAT | 5.25 | | 472.50 |
| | | | $6,328.75 |

Telephone conversations for which the court cannot discern the purpose are not compensable as are office conferences bearing the same general notation. Entries simply captioned "Bankruptcy Research" will not be compensated. Moreover, because of the circumstances of the case and the potential for conflicts of interest, the court declines to award compensation for services which are not clearly within the purpose for which the court authorized retention. Therefore, the court will order that Joyce and Kubasiak be awarded the sum of $6,328.75 as reasonable and necessary attorneys fees and $165.06 as expenses.