**In re PALOMAR TRUCK CORPORATION, dba Palomar R.V., Debtor.**

**NORTH COUNTY JEEP AND RENAULT, INC., Appellant,**

v.

**GENERAL ELECTRIC CAPITAL CORPORATION, Appellee.**

Bankruptcy No. 88–02459–LM11.

BAP No. SC–89–1249–VJR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued & Submitted Jan. 17, 1990.

Decided July 23, 1990.

No Appearance by appellant.

Gregory B. Beam, Santa Ana, Cal., for appellee.

Before VOLINN, JONES and RUSSELL, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

## OVERVIEW

Appellant North County Jeep & Renault incurred losses while independently operating the debtor's business. It thereafter moved for an order allowing those losses as an administrative expense and sought payment of those losses from a secured creditor, appellee General Electric Credit Corporation, from the proceeds of secured property under 11 U.S.C. § 506(c).[1] The bankruptcy court allowed an administrative expense claim in the amount requested but denied the motion for payment of the claim under § 506(c) on the basis that appellant lacked standing to assert a right to repayment under that Code section. Appellant filed this timely appeal. We AFFIRM.

## FACTS

The debtor, Palomar Truck Corporation ("Palomar") filed a petition under chapter 11 on March 28, 1988. Palomar operated a motor vehicle dealership. Its assets were subject to security interests in favor of General Motors Acceptance Corporation ("GMAC"), Chrysler Credit Corporation ("CCC"), and other parties not involved with this appeal. The appellee, General Electric Capital Corporation ("GECC"), asserts that it holds a blanket security interest in all Palomar assets, subject only to the superior claims of GMAC and CCC.

The bankruptcy court appointed Steven A. Berkowitz as chapter 11 trustee for the Palomar bankruptcy estate on June 9, 1988. Soon thereafter, the trustee met with James Williams, a representative of appellant North County Jeep and Renault, Inc. ("North County"), to discuss North County's interest in purchasing Palomar's motor vehicle dealership. Mr. Williams and the trustee inspected the physical assets of the Palomar dealership and determined that those assets had a liquidation value of approximately $75,000, an amount insufficient to satisfy the secured claims of GMAC and CCC. After negotiations, North County agreed to purchase the assets of Palomar related to the sale of Jeep and General Motors vehicles, including the franchise rights, for $150,000.

---

**1.** All chapter and section references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, unless otherwise indicated.

Pending bankruptcy court approval of the sale, North County agreed to operate the Palomar Truck dealership at no expense to the trustee or the estate. Under the agreement, North County would be entitled to any profits and would bear any losses arising from the operation of the business. At the time of this agreement, Palomar was in default under its flooring agreements with GMAC, CCC, and GECC. The estate had no funds to meet current expenses or operate the business and the business would have closed if North County had not stepped in. Continued operation of the dealership was important because if the business had closed, the franchise agreements with General Motors and Chrysler would have terminated, and presumably the value of the business would have been significantly reduced.

The bankruptcy court heard the trustee's motion for authority to sell the Palomar assets to North County on July 6, 1988. Although North County and the trustee had apparently agreed that North County's offer would not be subject to overbid, the bankruptcy court determined in its discretion that overbids would be permitted. The successful bidder, Sunroad Capital Corporation purchased the Palomar assets for $495,000 and assumed operating responsibilities for the dealership on July 6, 1988. GMAC and CCC have been or will be paid in full from the sale proceeds. GECC apparently claims that it is entitled to the remaining sale proceeds.

Subsequently, North County moved for allowance of administrative expenses in the sum of $66,601.79, which was the amount of its net operating loss during the time it operated the Palomar dealership under the agreement with the trustee. North County further requested that the expenses be paid from property securing GECC's allowed secured claim under § 506(c).[2] GECC objected. At a hearing on January 5, 1989, the bankruptcy court orally granted North County's motion to have its operating losses allowed as an administrative expense, but ruled that North County

lacked standing to recover its administrative expense claim under § 506(c). On March 13, 1989, the bankruptcy court entered its written order, and also entered an order denying North County's motion for reconsideration of the § 506(c) ruling. North County timely filed this appeal.

## ISSUE

Whether a party other than the trustee has standing under § 506(c) to recover from property securing an allowed secured claim its reasonable and necessary costs and expenses of preserving such property.

## STANDARD OF REVIEW

■ Statutory interpretation involves an issue of law and is subject to *de novo* review. *See In re Orvco, Inc.*, 95 B.R. 724, 726 (9th Cir. BAP 1989).

## DISCUSSION

■ The bankruptcy court held that North County lacked standing to seek payment of its allowed administrative claim under § 506(c). Section 506(c) provides as follows:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Section 506(c) was intended as a codification of a line of cases applying the equitable principle that a lienholder may be charged with the reasonable costs and expenses required to preserve or dispose of the collateral, when incurred by the debtor, debtor-in-possession, or trustee. 3 *Collier on Bankruptcy* ¶ 506.06 at 506–55 (15th ed. 1989); *see also* H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977); S. Rep. No. 95–989, 95th Cong., 2d Sess. 68 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5854, 6312–6313. The legislative history of § 506(c) states in part that

---

**2.** The trustee also filed a motion for recovery of his costs and expenses under § 506(c). That

motion is not at issue in this appeal.

Any time the trustee or debtor-in-possession ·expends money to provide for the reasonable and necessary costs and expenses of preserving or disposing of a secured creditor's collateral, the trustee or debtor-in-possession is entitled to recover such expenses from the secured party or from the property securing an allowed secured claim held by such party.

124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); S17411 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

Although the specific language of § 506(c) and its legislative history appear to restrict recovery under that section to the trustee,[3] courts are divided on the question of whether standing under § 506(c) is so limited. Many courts have held that standing under § 506(c) is strictly limited to the trustee, and have barred other parties from recovering under that section. *See e.g., In re Interstate Motor Freight System IMFS, Inc.,* 71 B.R. 741 (Bankr.W. D.Mich.1987) (*"IMFS I"*); *In re Dakota Lay'd Eggs,* 68 B.R. 975 (Bankr.D.N.D. 1987); *In re Codesco, Inc.,* 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982). Other courts have held that standing is not so limited and have allowed entities other than the trustee to recover under § 506(c). *See e.g., In re McKeesport Steel Castings Co.,* 799 F.2d 91 (3d Cir.1986); *In re Staunton Indus., Inc.,* 74 B.R. 501 (Bankr.E.D.Mich.1987).[4]

The reasoning of the courts that have limited standing to the trustee is based on the language of the statute and its legislative history, under which the trustee is the only entity expressly granted authority to recover administrative expenses. *See, e.g.,*

*Dakota Lay'd Eggs,* 68 B.R. at 978; *Codesco,* 18 B.R. at 230.

Courts adopting a more expansive view of standing under § 506(c) point out that while that section by its terms grants the trustee authority to recover administrative costs and expenses from the collateral of the benefitted secured creditor, it "does not definitively state that no other entity may do so." *Staunton Indus.,* 74 B.R. at 504. The *Staunton* court also pointed out that the perceived violation of § 726(b) described by the *IMFS I* court presupposes the conclusion that only the estate, and not a particular creditor, may recover under § 506(c), stating:

It is not clear to this Court, however, why recovery of monies expended by third parties to protect the secured creditor's collateral *should* flow into the general estate to be subject to § 726(b). Thus the rationale of *Interstate Motor Freight* begs the question.

74 B.R. at 506 (emphasis added). These courts also note the inequitable result that may flow from denying recovery to the administrative claimant when the trustee fails or refuses to act. *See, e.g., McKeesport Steel,* 799 F.2d at 94. This result could occur where the trustee has no incentive to pursue a § 506(c) recovery or may be hostile to the claimant. *See id.; see also In re Chicago Lutheran Hosp. Assoc.,* 89 B.R. 719, 726 n. 9 (Bankr.N.D.Ill.1988); 3 *Collier on Bankruptcy* ¶ 506.06, at 506–57 n. 7a (15th ed. 1989).

*Collier on Bankruptcy* concurs in the more expansive interpretation of standing under § 506(c). After reviewing those cases which have adopted the strict interpretation, the author states that "[t]hese

3. For purposes of this discussion, references to the standing of the trustee under § 506(c) shall be deemed to include a Chapter 11 debtor-in possession pursuant to § 1107(a), which provides in pertinent part as follows:

[A] debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

4. We are unaware of any Ninth Circuit or Panel decisions addressing this issue. In *In re Sonoma V,* 24 B.R. 600 (9th Cir. BAP 1982) the Panel did indicate that fees of the attorney for the

debtor may be charged to the secured creditor under § 506(c) where it is demonstrated that the secured creditor derived a benefit from the services. Although *In re Loop Hospital Partnership,* 50 B.R. 565 (Bankr.N.D.Ill.1985), relied upon *Sonoma* to determine that attorneys may petition for fees under § 506(c), the *Sonoma* decision did not discuss or analyze standing under § 506(c). A close reading of the decision does not reflect whether it was the reorganized debtor or the attorneys themselves who sought recovery under § 506(c).

cases represent the minority view," and concludes that:

> The better view is that a secured creditor who received a direct benefit from the rendition of services or provision of goods by an administrative claimant of the estate should have the collateral charged for such benefit.... Otherwise, if the debtor, debtor in possession or trustee does not have available funds to pay the claimant, the debtor, debtor in possession or trustee has no economic incentive to seek recovery under [§ 506(c)] of amounts which will be paid over to the claimant and, as a result, the secured creditor obtains a windfall at the expense of the unpaid claimant.

3 *Collier on Bankruptcy*, ¶ 506.06, at 506–57 n. 7a (15th ed. 1989).

North County argues that its operation of the debtor's dealership allowed the dealership's General Motors and Chrysler franchises to be maintained, thereby preserving that portion of the estate to GECC's benefit; if the franchises had not been maintained, the value of GECC's collateral would have been substantially reduced. North County also argues that it is the only party with an interest in bringing an action under § 506(c) because the trustee has no interest in bringing an action where any recovery which may be had would be paid over to North County.

North County principally relies on *McKeesport Steel* and *Staunton Indus.* as authority for the expansive interpretation of § 506(c) it urges we adopt in this case. However, two significant factors distinguish *McKeesport Steel* and *Staunton Indus.* from the present case. First, in both cases the orders of the court were significantly involved in the arrangements which caused the claimant's administrative expense claim to accrue. Prior court approval stamps the claimant's subsequent actions with the court's imprimatur and causes the claimant to justifiably rely on the fact that it will be repaid, regardless of whether the trustee has the economic motivation to seek that repayment for the claimant. Prior court approval of arrangements leading to an administrative claim

provides the claimant with a more colorable right to assert a § 506(c) claim.

Second, in both *McKeesport Steel* and *Staunton Indus.* the § 506(c) claimant was continuing, after bankruptcy, a pre-existing business relationship with the debtor when it incurred the expense for which it sought reimbursement. The utility in *McKeesport Steel* in fact sought to terminate its relationship with the debtor, but was barred from doing so by the court. In both of these two cases the claimant simply continued as before pursuant to a court order.

But here, there is no indication in the record that North County had any connection with the debtor prior to the time it entered into the operating agreement. North County, by entering into the agreement, embarked voluntarily on a new venture which it knew could result in either gain or loss. Obviously it anticipated a gain, hoping to earn an operating profit, and more important, to purchase the business at a favorable price.

North County further relies upon certain equitable factors set forth in a footnote in *In re Loop Hospital Partnership:*

(1) Was there a reasonable expectation of consummation or success for the reorganization;

(2) Were the services done primarily to protect unsecured creditors and debt or was due regard also had for the secured creditor's interest;

(3) Were the services performed with reasonable diligence and confidence;

(4) Were the secured creditors benefited by anything done in the reorganization;

(5) Did the secured creditors consent, waive objection or request;

(6) Were the secured creditors responsible for any delays or uncooperative in attempts to formulate an acceptable plan.

50 B.R. 565, 571 (Bankr.N.D.Ill.1985).

While these factors provide a basis for consideration of § 506(c) charges by a nontrustee, they provide little support for North County's position. The only relevant factor favoring North County is that the secured creditor in this case, GECC, may

have benefited by North County's operation of the business. However, North County did not enter into the operating agreement with the consent of GECC. It proceeded on its own initiative on a non-competitive bid, hoping to purchase the business at an advantageous price. North County did not obtain the consent of any of the secured creditors to enter into the agreement. There is insufficient evidence in the record to apply the remaining factors.

This is not a case to consider adoption of the more expansive view of standing because the facts before us would not justify its application. Here a disappointed bidder seeks to impose the cost of its gamble on the holder of a security interest in property. North County was not simply performing a caretaker function respecting the operation of the dealership, but was entitled to retain whatever profits its business operations generated; concurrent with the profit potentiality was the risk of incurring losses. It also operated the business hoping for the benefit of a purchase based on a non-competitive bid.

## CONCLUSION

North County neither sought nor obtained court approval before it entered into the agreement to operate the debtor's business. It has made no showing that the secured creditor should be obligated to contribute to the expense North County has incurred. Nor has North County shown that the estate may be faced with a charge by it for which the estate might claim indemnification from the secured creditor.[5] We conclude that the circumstances of this case do not endow appellant with standing to seek relief under § 506(c). The judgment of the bankruptcy court is AFFIRMED.

---

5. We note that the trial order has allowed the North County charges as a general expense of   administration.