951 F.2d 229
 25 Collier Bankr.Cas.2d 1734, Bankr. L. Rep. P 74,391
In re PALOMAR TRUCK CORPORATION, dba Palomar R.V., Debtor.
NORTH COUNTY JEEP AND RENAULT, INC., Appellant,
v.
GENERAL ELECTRIC CAPITAL CORPORATION, Appellee.
 No. 90-56112.
 United States Court of Appeals,
Ninth Circuit.
 Submitted Oct. 8, 1991*.
Decided Dec. 16, 1991.
 
 Alan L. Williams, San Diego, Cal., for appellant.
 Gregory B. Beam and Sam M. Muriella, Hart, King and Coldren, Santa Ana, Cal., for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel.
 Before BROWNING, ALARCON and T.G. NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Palomar Truck Corporation, which operated a motor vehicle dealership, filed a voluntary Chapter 11 petition. A trustee was appointed. The Trustee met with a representative of North County Jeep and Renault, Inc. ("North County"), and agreed to sell the dealership to North County for $150,000. The trustee and North County agreed the dealership must remain open to preserve the new car franchises pending court approval of the sale. Palomar lacked the money to continue operating the business. North County agreed to operate the dealership while the Trustee obtained court approval of the sale. In return, the Trustee promised that the sale would not be subject to overbid.
 
 
 2
 The bankruptcy court decided to entertain overbids despite the trustee's agreement to the contrary. The successful bidder, Sunroad Capital Corp., bid $495,000, and assumed operating responsibility for the dealership.
 
 
 3
 It is not disputed that if North County had not intervened the business would have closed, the franchise agreements would have been terminated and "presumably the value of the business would have been significantly reduced." In re Palomar Truck Corp., 116 B.R. 169, 171 (Bankr. 9th Cir.1990).
 
 
 4
 North County petitioned the bankruptcy court to allow $66,601.79, North County's loss during the period of interim operation of the dealership, as an administrative expense and to pay this expense from properties securing the claim of General Electric Capital Corporation (GECC),[1] pursuant to 11 U.S.C. § 506(c). The motion to allow the claim as an administrative expense was granted. The motion to order payment from property securing GECC's claim was denied on the ground North County lacked standing to assert a right for repayment under § 506(c). The Bankruptcy Appellate Panel affirmed, agreeing that North County lacked standing. Palomar, 116 B.R. at 174.[2]
 
 
 5
 Section 506(c) provides:The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.
 
 
 6
 The legislative history extends standing to assert a claim under § 506(c) to debtors in possession as well as trustees. 124 Cong.Rec. H11095 (daily ed. Sept. 28, 1978) (statement of Rep. Edwards); S17411 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini). See also 11 U.S.C. § 1107(a) providing that in a proceeding under Chapter 11, a debtor in possession shall have the rights and powers of a trustee.
 
 
 7
 Bankruptcy court decisions are divided as to whether § 506(c) may also be invoked by third party claimants. Some bankruptcy courts have adopted a strict view, holding the section available only to trustees and debtors in possession.[3] Others have adopted a more expansive reading, extending standing to third parties.[4] A number of bankruptcy courts have adopted the expansive reading only upon a showing that the Trustee refused a request by the claimant to pursue the claim.[5]
 
 
 8
 The Court of Appeals for the Third Circuit addressed the issue In re McKeesport Steel Castings Co., 799 F.2d 91 (3d Cir.1986). In order to permit sale of the debtor's manufacturing company as a going business, the bankruptcy court ordered the gas company to continue to render service to the debtor and the gas company did so. The gas company later petitioned to recover the cost of the gas provided post-petition pursuant to the court's order. The Third Circuit held the gas company had standing under § 506(c) despite the seemingly categorical statutory language confining the remedy to trustees:
 
 
 9
 The rule that individual creditors cannot act in lieu of the trustee is often breached when sufficient reason exists to permit the breach. In this case, neither the debtor in possession nor a creditors committee had reason to make a claim on behalf of [the gas company], when the debtor thereby would be required to pay for utilities it had received without charge following the date that its petition was filed. Thus, because [the gas company] had a colorable claim for expenses and was the only creditor that would zealously pursue that claim, it has standing to bring a § 506(c) action.
 
 
 10
 Id. at 94.
 
 
 11
 The BAP distinguished McKeesport on two grounds. The BAP noted that in McKeesport the bankruptcy court was significantly involved in and had approved the arrangement that caused the administrative expense claim to accrue. In this case, there was no such involvement or approval. 116 B.R. at 173. In McKeesport the claim accrued during the continuation after bankruptcy of a pre-existing business relationship with the debtor. In this case, the claimant had no connection with the debtor prior to entering into the operating agreement, and "by entering into the agreement, embarked voluntarily on a new venture which it knew could result in either gain or loss." Id. GECC makes a similar point, arguing North County undertook to operate the dealership in order to acquire the business at a "bargain basement price."These distinctions are not persuasive. Prior court approval may make a claim for administrative expenses more palatable, but it is nowhere required in the Code. Both the prior relationship between the debtor and the claimant and the motivation of the claimant seem irrelevant. Presumably all persons who provide services to Chapter 11 debtors do so for profit. The Code does not require that the claimant have the best interests of the secured creditors in mind, but only that the expenditures be "reasonable, necessary costs and expenses of preserving, or disposing of, such [secured] property." 11 U.S.C. § 506(c).
 
 
 12
 Like the trustee in McKeesport, the trustee here had no economic incentive to seek recovery under § 506(c), since the recovery would pass to the claimant with no gain to the estate. As in McKeesport, if only the trustee were allowed standing, the result would be a windfall for the secured creditor at the expense of the unpaid claimant. 3 Collier on Bankruptcy, p 506.06, at 506-57 to 506-58 n. 7a (15th ed. 1990).
 
 
 13
 No compelling policies are served by a restrictive reading of § 506(c) in the circumstances of this case. GECC argues that restricting standing to the trustee enables the trustee to maintain control of the liquidation of an estate, citing In re Dakota Lay'd Eggs, 68 B.R. 975, 978 (Bankr.D.N.D.1987), but this case involves a reorganization under Chapter 11, not a liquidation. GECC cites In re Interstate Motor Freight System IMFS, Inc., 71 B.R. 741, 744 (Bankr.W.D.Mich.1987), in support of the contention that a narrow reading preserves Section 726's policy favoring parity of payment to all claimants in a class. Again, this policy is not applicable in the Chapter 11 context.[6]
 
 
 14
 We agree with the Third Circuit that standing need not be limited to trustees and debtors in possession. We do not decide whether a third party claimant should have standing only in those cases in which the trustee or debtor in possession has refused the third party's request to recover the property.[7]
 
 
 15
 REVERSED and REMANDED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 [1]
 The new car inventory and assets of the dealership were subject to security interests in favor of General Motor Acceptance Corp. (GMAC) and Chrysler Credit Corp. (CCC). General Electric Capital Corp. (GECC), holds a blanket security interest in all Palomar assets, subject only to the superior claims of GMAC and CCC
 
 
 [2]
 North County argued, alternatively, the court should order payment of the operating loss under its equitable powers to subordinate claims under § 510(c), citing In re Loop Hospital Partnership, 50 B.R. 565 (Bankr.N.D.Ill.1985). North County has not demonstrated that GECC engaged in inequitable conduct, a prerequisite to equitable subordination under § 510(c). In re Universal Farming Industries, 873 F.2d 1334, 1337 (9th Cir.1989). The Loop court did not rely on the power of equitable subordination granted by § 510(c), but upon the general equitable power of bankruptcy courts. Loop, 50 B.R. at 571. As the BAP noted, there is insufficient evidence in the record to justify a grant of relief under the bankruptcy court's general equitable power on the basis of the factors noted in Loop, 50 B.R. at 571 n*. Palomar, 116 B.R. at 173-74
 
 
 [3]
 See e.g., In re Interstate Motor Freight Sys. IMFS, Inc., 71 B.R. 741, 746 (Bankr.W.D.Mich.1987); In re Dakota Lay'd Eggs, 68 B.R. 975, 978 (Bankr.D.N.D.1987); In re Groves Farms, Inc., 64 B.R. 276, 277 (Bankr.S.D.Ind.1986); In re Fabian, 46 B.R. 139, 141 (Bankr.E.D.Pa.1985); In re Thomas, 43 B.R. 201, 208 (Bankr.M.D.Ga.1984); In re Codesco, Inc., 18 B.R. 225, 230 (Bankr.S.D.N.Y.1982)
 
 
 [4]
 See e.g., In re World Wines, Ltd., 77 B.R. 653, 658 (Bankr.N.D.Ill.1987); In re Birdsboro Casting Corp., 69 B.R. 955, 958 (Bankr.E.D.Pa.1987); In re Wyckoff, 52 B.R. 164, 167 (Bankr.W.D.Mich.1985) (dicta); In re Loop Hospital Partnership, 50 B.R. 565, 571 (Bankr.N.D.Ill.1985); In re Isaac Cohen Clothing Corp., 39 B.R. 199, 201 (Bankr.S.D.N.Y.1984)
 
 
 [5]
 See, e.g. In re So Good South Potato Chip Co., 116 B.R. 144, 146 (Bankr.E.D.Mo.1990); In re Staunton Industries, Inc., 74 B.R. 501, 506 (Bankr.E.D.Mich.1987); In re DLS Industries, Inc., 71 B.R. 679, 681 (Bankr.D.Minn.1987). The record on appeal does not indicate whether such a demand was made by North County
 
 
 [6]
 Since this case does not present the issue, we do not decide whether these policies would dictate a narrow standing rule in Chapter 7 cases
 
 
 [7]
 See Footnote 5