In re Lilly C. ANDERSON aka L.C. Gross, Debtor.

**BANK OF HONOLULU, Appellant,**

v.

**Lilly C. ANDERSON, aka L.C. Gross and Trustee in Bankruptcy, Appellees.**

**Bankruptcy No. 83–00089.**
**BAP No. HI–85–1505–MeAsE.**

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued and Submitted April 25, 1986.

Decided Aug. 19, 1986.

---

Gregory P. Conlan, Chun, Kerr & Dodd, Honolulu, Hawaii, for appellant.

Terry L. Day, Brown & Johnson, Honolulu, Hawaii, for appellees.

Before MEYERS, ASHLAND and EL-LIOTT, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

This appeal presents the issue of whether, under Section 506(c) of the Bankruptcy Code, a real estate broker is entitled to payment from the proceeds of the sale of property it arranged before the secured creditor has been paid in full. The trial court allowed such payment. We AF-FIRM.

### II

### FACTS

The principal asset of the Debtor, Lilly C. Anderson, was real property located at 565 Portlock Road in Honolulu. The Bank of Honolulu ("Bank") was secured by a vendor's lien in the Portlock property. Over the objection of the Bank, a trustee was appointed on December 20, 1983, and was authorized to sell the property. Bradley Properties, Inc. ("Bradley") was retained by the trustee as the real estate agent to sell the property.

The trial court confirmed the sale of the property for $1,200,000. On August 23, 1984, the Bank received a total of $1,024,-483.32. This included $755,711 in principal, $217,033.99 in interest and $51,738.33 in expenses. After the payment of other expenses, the estate held $142,635.91 as the proceeds of the sale. The Bank is also secured by a fund of $56,000 in monies deposited by the Debtor in state court as security for a pre-petition appeal.

It must be noted that neither the trustee nor the Bank have been able to provide this Panel with a completely satisfactory description of all of the expenses charged or sought to be charged against the funds. Also, neither party has stated how much interest these funds have generated. The record reflects that the trial court granted the Bank additional attorney fees of $21,-578.71. In addition, the Bank requested and was denied delay damages of $107,-271.33, as well as $8,916.13 more in attorney fees. These orders are the subject of two pending appeals. In its brief the Bank asserted that it planned to file a further request for at least another $15,000 in attorney fees.

Bradley sought the customary 6% broker's commission of $72,000. The trial court granted a 5% commission of $60,000. By court order Bradley was paid $36,000. No appeal was taken from that decision. No appeal was apparently taken from $3,748.11 awarded to a pre-petition state court commissioner in fees and expenses. On the basis of the record provided, it appears that the sums sought by the Bank and Bradley exceed the remaining sale proceeds.

## III

## DISCUSSION

In the Ninth Circuit it has long been the rule that the determination of whether the proceeds from the sale of property are chargeable with the expenses of the sale rests upon the sound discretion of the trial judge. *Silver State Savings and Loan Association v. Young*, 252 F.2d 236, 238–39 (9th Cir.1958). However, under the Code this discretion is limited by Section 506(c). *In re Sonoma V*, 24 B.R. 600, 604 (9th Cir. BAP 1982).

Section 506(c) authorizes a trial court to charge collateral for sale expenses only if the expenses were reasonable, necessary and benefited the secured party. *In re Sonoma V, supra*, 24 B.R. at 603. In the instant case the trial court concluded that the trustee had met this test. This issue is a question of fact which is reversible only if clearly erroneous. *Matter of Trim-X, Inc.*, 695 F.2d 296, 299, n. 4 (7th Cir.1982); Bankruptcy Rule 8013. In its brief the Bank does not contest the first two elements of Section 506(c), only the last.

Courts have narrowly interpreted the term "benefit to the secured creditor". *In re Proto-Specialties, Inc.*, 43 B.R. 81, 83 (Ariz.1984). However, the Bank argues for an even narrower interpretation than previously adopted by any court. The Bank contends that no benefit was conferred on it by the sale of the property. The Bank was prepared to foreclose in state court at the time of the filing of the petition. However, the Bank's ability to pursue a state foreclosure sale does not mean that Bradley's actions conferred no benefit on the Bank. *In re Truitt*, 15 B.R. 169, 172 (N.Ga.1981); *contra, In re Modern Mix, Inc.*, 18 B.R. 746, 749 (S.Ala.1982).

■ We read the Code to provide for the payment of the trustee's direct costs of sale out of the proceeds of the sale before distribution to the secured creditors. *See In re Marino*, 794 F.2d 1367, 1370 (9th Cir.1986), Case No. 85–2011, slip op. at p. 7; *In re Neu-Deli Corp.*, 19 B.R. 175, 176 (S.Ala.1982); *In re Wyckoff*, 52 B.R. 164, 168 (W.Mich.1985).

If the Bank had been allowed to foreclose, it would have borne foreclosure expenses and presumably would have hired a real estate agent. The last time the Bank successfully foreclosed on this property it took several months to find a new buyer—the Debtor. Instead of facing repossession of the same real property again, the Bank already has been paid its principal, interest at the contract rate and substantial legal fees.

The record submitted by the Bank does not contain any facts which show that the trial court's determination was clearly erroneous. The Bank argued that the property could have been sold for more in 1983, based on the trial court's then valuation. This does not mean that the property could have been sold for more in 1984 than the trustee actually got for it. If the Bank believed that the property was sold at a below-market price, it could have contested the sale. However, the Bank did not do so. The Bank is trying to benefit at the expense of an outside professional whose work directly benefited the Bank. To the extent that the reasonable costs of sale are not paid out of the proceeds, the unsecured creditors, who may not receive any benefit from the sale, will be forced to bear this burden.

■ We disavow decisions which limit Section 506(c) expenses to the amount of the foreclosure cost saved by the lienholder such as *In re Codesco*, 18 B.R. 225, 229 (S.N.Y.1982) and *In re Truitt, supra*, 15

**100**

B.R. at 171. Such a limitation stems from a fundamental misreading of both the statute and its legislative history. No such limitation is contained in the wording of the statute.

■ The statute imposes only three limitations on the expenses that can be recovered from a secured party. The expenses must be necessary and reasonable and are limited to the extent of the benefit to the secured party. For the reasons given above, we hold that a commission to a third party real estate broker is of benefit to a secured party. 11 U.S.C. § 506(c). It is not necessary that a secured party consent to such an expense.

AFFIRMED.