### In re SPECIALTY PLYWOOD, INC., a California corporation, Debtor.

Bankruptcy No. SA 91–33159 JW.

United States Bankruptcy Court, C.D. California.

March 5, 1992.

Douglas M. Neistat, Walter Y. Kim, Angel & Neistat, Los Angeles, Cal., for Spe-

---

cialty Plywood, Inc., a California corporation.

Richard W. Labowe, Victoria M. Camilli, Labowe, Labowe & Hoffman, Los Angeles, Cal., for Max Rouse & Sons, Inc.

## MEMORANDUM OF DECISION RE: APPLICATION OF AUCTIONEER FOR FEES AND EXPENSES AND ORDER THEREON

JOHN J. WILSON, Bankruptcy Judge.

### I. INTRODUCTION

Max Rouse & Sons, Inc. ("Rouse"), auctioneers, move for an order allowing payment of its professional fees and reimbursement of expenses pursuant to the order employing Rouse in this bankruptcy case. The motion is granted, subject to the limitations discussed *infra*.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Specialty Plywood, Inc. a California corporation ("Specialty" or "Debtor") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code on April 5, 1991. Specialty was in the business of manufacturing plywood and wood veneers. The bankruptcy estate's major assets consisted of heavy equipment for making plywood and wood veneers ("Equipment"). Sunwest Bank ("Sunwest") had a security interest in the Equipment to secure Specialty's obligation to Sunwest.

Eventually, Specialty determined that it would not be able effectively to reorganize, and decided to liquidate its assets. To that end, Specialty applied for an order authorizing the employment of Rouse as auctioneer to sell the Equipment. The application for an order shortening time on Debtor's motion for an order approving Rouse's employment attached a declaration of Debtor's President stating that Debtor's "low estimates [sic] of the sales revenue based on an auction will be $500,000."

This court authorized Rouse's employment by order entered on July 12, 1991. The order provided that Rouse was to be compensated as follows:

[D]ebtor is authorized to pay out of the proceeds of the sale to [Rouse] the ten percent (10%) fee and reasonable expenses but only after submission to this Court of [Rouse's] report of the sale submitted with an appropriate form of order; and it is

FURTHER ORDERED that Debtor is authorized to pay in full from the proceeds of the sale the allowed secured claim of [Sunwest] and all claims entitled to priority of payment under Section 507 of the Bankruptcy Code; ....

By motion filed on June 28, 1991, Specialty moved for an order authorizing the sale of the Equipment out of the ordinary course of business. Specialty proposed to sell the Equipment free and clear of all liens, with the liens to attach to the proceeds of the sale. This Court granted Specialty's motion.

The auction of the Equipment, conducted by Rouse, took place on August 20, 1991. The sale price of the Equipment was $242,207.00, approximately $250,000.00 less than the value anticipated by Debtor. Sunwest received $168,000.00 from the proceeds of the sale, leaving $74,207.00 for the bankruptcy estate. Rouse claims a commission of $24,220.70 and $34,043.41 in expenses for a total of $58,264.11. As noted in the objection of the Office of the United States Trustee to Rouse's application, Rouse did not set forth a detailed breakdown of its expenses, as required by Federal Rules of Bankruptcy Procedure Rule 2016(a) and Local Bankruptcy Rule 141(3)(a)(vi).

In addition to Rouse's claim for fees and expenses, Debtor's estate has other significant administrative claims. Debtor's counsel have incurred unapproved and unpaid attorney's fees of approximately $50,000.00, and Debtor's landlord, High Equity Partners ("High Equity"), is owed approximately $64,000.00 in unpaid post-petition rent for Debtor's business premises. As noted in High Equity's objection, other administrative claims are also unpaid in this case. Therefore, it appears that Specialty's bankruptcy estate is administratively insolvent.

On October 7, 1991 Rouse filed its final report and requested payment of its commission and reimbursement of its expenses. Debtor and High Equity objected to Rouse's requested payment, claiming that as a professional employed by the bankruptcy estate Rouse must be paid *pro rata* along with other administrative claimants. After the hearing on the motion on December 18, 1991, this Court took the matter under submission to consider (A) the sufficiency of Rouse's application for reimbursement of expenses; and (B) whether under the circumstances Rouse is to be paid *pro rata* along with other administrative claimants in this case.

## III. DISCUSSION

### (A) Sufficiency of Application for Reimbursement of Expenses

 sought recovery of costs and expenses of $34,721.70 in addition to a commission of $24,220.70. The Debtor seeks to disallow some of these expenses including salaries and wages of $7,334.25 and advertising charges of $22,516.73. While the Debtor asserted that some of the salaries and wages were excessive no competent evidence was offered to support its position. Rouse, on the other hand, submitted declarations of Bob Sales and Harold Rouse which support Rouse's position, and there is no persuasive evidence that these charges were unreasonable or unnecessary. They will be approved.

 The Debtor also contended that some portion of the advertising expense should be reduced because the auctioneer included in its brochures items to be sold that were not part of the Debtor's estate. Based on the sparse record furnished by the parties the court finds that $3,500 of advertising charges were incurred in connection with the sale of property that was not part of this estate and that a reduction in the auctioneer's expenses in this amount is reasonable. The court further finds that the amount of $1,924 for legal and professional services is not reimbursable out of the estate.

In sum, the auctioneer's expenses are approved in the sum of $29,297.70.

### (B) Pro Rata Payment of Administrative Claimants

 Rouse raises primarily three arguments:

(1) that the order authorizing its employment in the bankruptcy estate prohibits anything other than an award of its full 10% commission;

(2) that its fees and expenses are a "cost of sale" which cannot be reduced, citing *Bank of Honolulu v. Anderson* (*In re Anderson*), 66 B.R. 97 (9th Cir. BAP 1986) ("*Anderson*"); or

(3) that the language of the order authorizing Rouse's employment requires that Rouse be paid prior to any administrative or other claims, including Sunwest.

 It is beyond dispute that Rouse, as auctioneer, is an employed professional under 11 U.S.C. § 327(a). Like any other professional employed by a bankruptcy estate, Rouse's fees and expenses are subject to Court review and approval. 11 U.S.C. §§ 328(a); 330(a). Those fees and expenses may be reduced in at least two ways: first, because the bankruptcy court must ensure that the fees and expenses awarded are reasonable and necessary (11 U.S.C. § 330(a)(1), (2)); and second, through the possibility of administrative insolvency, as is the case here. Among administrative claimants of the same priority in an administratively insolvent estate, those claimants will be paid their approved fees and expenses *pro rata*.

*Anderson* does not change this result. In *Anderson*, the trustee was authorized to sell the debtor's principal asset, a parcel of real property encumbered by the vendor's lien of a bank. The trustee retained a real estate broker to sell the real property. Following the sale, the court allowed the real estate broker to receive a 5% commission before the bank was paid from the proceeds of the sale, even though the sale proceeds appeared insufficient to pay both the broker and the bank.

In *Anderson* the Bankruptcy Appellate Panel affirmed the bankruptcy court's decision granting a 5% commission to a real estate broker and surcharging that amount against the secured creditor's share of the sale proceeds pursuant to 11 U.S.C. § 506(c). The court had previously ordered the commission paid out of the sale proceeds and no appeal was taken from that order.

By contrast, this dispute arises in a different context. Here Rouse is not seeking to surcharge the secured creditor's recovery but is seeking his fees and expenses solely in the capacity of a retained professional.[1] This case presents the more difficult question namely, should the auctioneer be paid his commission and expenses as a cost of sale before the proceeds are turned over to the trustee, or should the auctioneer, as a retained professional, be paid on the same basis as all other administrative claimants with equal priority. The court holds that Rouse's claim should be paid under 11 U.S.C. § 503(b)(1)(A) as a first priority claim, and when the estate is administratively insolvent all such claimants must be paid on a pro rata basis. The court does not reach the question or decide whether the Debtor or some other party in interest could recover any part of the auctioneer's fees and expenses from the secured creditor under 11 U.S.C. § 506(c) as that question, unlike in *Anderson,* is not before the court.

Rouse's third argument, which implies that the sequence of words in the order approving its employment irreversibly dictates the priority of payment, is not well-taken. The language of the order does not dictate the priority of the claims to the sale proceeds, and the fact that the word "Rouse" appears first among a list of other administrative claimants as well as before the words "Sunwest Bank" is not dispositive. While arguably the language of the order might have been clearer, there has been no deviation from its terms, and this Court declines to impose upon that language the meticulous construction urged by Rouse.

This Court finds that Rouse has no greater or lesser priority than other administrative claimants. Therefore Rouse, as an employed professional, shall be paid *pro rata* along with other employed professionals and administrative claimants in Debtor's bankruptcy estate.

## IV. AWARD AND CONCLUSION

Based on the foregoing, the Court grants Rouse's application for final fees in the amount of $24,220.70 and reimbursement of expenses in the amount of $29,297.70. This memorandum of decision constitutes the Court's findings of fact and conclusions of law.

IT IS SO ORDERED.

---

1. In *Anderson,* neither the bankruptcy court nor BAP appear to have considered whether the broker's commission was paid to a retained professional and if so, whether that commission should be pro rated with other administrative creditors if the estate was insolvent. Those questions, present in this case, do not appear to have been present in Anderson.