In re GRAPHIC ARTS, INC., Debtor.

Bankruptcy No. 90–05347–A.

United States Bankruptcy Court,
D. Wyoming.

Oct. 6, 1992.

DECISION DENYING APPROVAL
OF FINAL REPORT

HAROLD L. MAI, Chief Judge.

THIS MATTER came before the court for hearing on June 9, 1992, on the United States Trustee's Objection to the Amended Final Report filed by the Chapter 7 Trustee.

The court having considered the Amended Final Report, the Objection thereto, the subsequently filed Second Amended Final Report, and having considered the statements and arguments of the Assistant United States Trustee and of the Trustee, all papers and pleadings filed herein, and upon its own review of the applicable statutes and authorities, does hereby render its Decision.

This case was commenced as a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on December 5, 1990. Randy L. Royal is the duly qualified, appointed, and acting trustee.

Prior to filing, the debtor corporation operated a commercial offset printing company. The debtor's equipment was located on premises operated by Don Cresswell, d/b/a Cresswell Enterprises.

The Trustee decided to sell the debtor's equipment in order to realize the equity for the estate. To this end, he obtained this court's approval of the employment of an auctioneer and an attorney. The auctioneer was employed upon the following terms: 15% of the gross proceeds, plus actual expenses.

Pursuant to the terms of employment, the auctioneer retained his fees and expenses from the gross proceeds. The fee was 15% of the total gross proceeds, or $2,098.20. The auction expenses, including some advertising, were $1,615.63. Thus, out of total gross proceeds of $13,988, the estate received net proceeds of $10,274.17.

The Trustee also incurred $4,315.31 for rent, utilities, and various services to Don Cresswell, d/b/a Cresswell Enterprises, because the equipment remained on the premises up past the auction date.[1] The Trust-

Paul Hunter, Atty. Advisor, Office of the U.S. Trustee, Cheyenne, Wyo., for movant.

Randy L. Royal, trustee, Greybull, Wyo., for respondent.

---

1. Purchasers were allowed to pick up some equipment several days after the auction. Final cleanup of the property had to await this pick up.

ee's attorney did not perform any services in connection with the sale, but he did charge the estate $180.52 for the preparation and mailing of the necessary documents for getting his retention approved and his fee allowed. In addition to the other expenses incurred in connection with the sale, the estate also incurred a total of $658.80 for "advertising," in addition to the expenses incurred by the auctioneer.

The Trustee then paid the secured creditor holding a lien on the equipment the amount of $6,157.31 in satisfaction of its lien. The Trustee also paid the secured creditor $606.17 for "collateral insurance."

Not counting the Trustee's own commission, the estate lost approximately $1,463.42 as a result of the Trustee's sale of the equipment. As is frequently the situation in a bankruptcy case, there is not enough money in the estate to pay 100% of the first priority administrative claims and expenses. As a result, the remaining priority claimants, mostly former employees with unpaid wage claims, will receive nothing from the Trustee's distribution of the estate assets. Similarly, all of the unsecured creditors will also receive nothing.

An examination of the Amended Final Report and the subsequently filed Second Amended Final Report shows that the Trustee has divided the first priority administrative claimants into two (2) categories, "Paid Administrative Expenses" and "Unpaid Administrative Expenses." The reports propose that the "paid" claimants retain their 100% payments and that the "unpaid" claimants receive payment pro rata at approximately 70%.

The United States Trustee objects to the reports as violating the rule that all administrative claimants of the same priority of distribution share pro rata if there are insufficient funds to pay all similar claimants 100%.

■ The United States Trustee is correct that the general rule is that "[a]mong administrative claimants of the same priority in an administratively insolvent estate, those claimants will be paid their approved fees and expenses pro rata." *In re Specialty Plywood, Inc.*, 137 B.R. 960, 962

(Bankr.C.D.Cal.1992). This rule applies equally to all professionals employed under the Bankruptcy Code, including auctioneers. *Id.*

In fairness to professionals employed on behalf of the estate, the trustee should make this possibility clear to the professional he chooses to hire. The professional is then free to accept, or refuse, the employment. If timely made aware of this rule, such professionals are often in a position to advise the trustee regarding whether or not, in their experience, the possibility of realizing net proceeds from property justifies the risk of less than full payment to the administrative claimants.

■ The rule regarding pro rata payments to each class in an administratively insolvent case does not end the matter. In a case such as the present, in which the secured creditor is the only ultimate beneficiary of a sale of estate assets, bankruptcy courts are empowered to surcharge the secured creditor's share of the proceeds pursuant to 11 U.S.C. § 506(c). *Bank of Honolulu v. Anderson, (In re Anderson)*, 66 B.R. 97, 99 (9th Cir. BAP 1986).

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, *or disposing of*, such property to the extent of any benefit to the holder of such claim.

11 U.S.C. § 506(c) (emphasis added).

As the Bankruptcy Appellate Panel pointed out in *Anderson, supra,*

> "Courts have narrowly interpreted the term 'benefit to the secured creditor.' ... the Bank's ability to pursue a state foreclosure sale does not mean that the [realtor's] actions conferred no benefit on the Bank....

> We read the Code to provide for the payment of the trustee's direct costs of sale out of the proceeds of the sale before distribution to the secured creditors....

> If the Bank had been allowed to foreclose, it would have born foreclosure expenses and presumably would have hired a real estate agent....

. . . .

. . . The Bank is trying to benefit at the expense of an outside professional whose work directly benefited the Bank. To the extent that the reasonable costs of sale are not paid out of the proceeds, the unsecured creditors, who may not receive any benefit from the sale, will be forced to bear this burden. . . .

The statute imposes only three limitations on the expenses that can be recovered from a secured party. The expenses must be necessary and reasonable and are limited to the extent of the benefit to the secured party. For the reasons given above, we hold that a commission to a third party real estate broker is of benefit to a secured party. 11 U.S.C. § 506(c). It is not necessary that a secured party consent to such an expense.

*Id.* 66 B.R. at 99 and 100 (citations omitted).

The matter before the court today does not require this court to adopt or to disavow the rule that such costs of sale chargeable to the secured party under § 506(c) are limited to the actual amount of sale costs saved by the lienholder. See, e.g., *Anderson,* at 99, and cases cited therein. In this case many of the expenses, such as storage, insurance, advertising, and the landlord's time charged for admitting potential buyers to view the property, at least arguably "benefited" the secured creditor. However, a determination of which expenses are chargeable to the secured creditor is not before the court without a motion pursuant to § 506(c).

Similarly, the matter before the court today does not involve the situation in which the unsecured creditors would actually receive a distribution as a result of the sale. In such a case, the estate would pay the secured creditors in full and would pay the costs of sale including professional fees for auctioneers, appraisers, real estate agents, and the like.

■ This court hereby adopts the rule that all reasonable costs and expenses of preserving or disposing of secured property, to the extent of any benefit to the holder of a secured claim, will be surcharged against the secured property.

If the surcharged amounts, together with the value of the secured claim, exceed the value of the said property, the secured property will be expeditiously abandoned by the trustee. If the trustee retains and sells secured property out of the estate, trustee may not claim a commission on disbursement of proceeds of sale of the secured property except to the extent the proceeds of sale exceed the surcharged amounts together with the value of the secured claim.

■ Accordingly, this court will sustain the Objection of the United State's Trustee to the Amended Final Report and will not approve either the Amended Final Report or the Second Amended Final Report, because they improperly propose that not all administrative claimants in the same class receive pro rata payment on their claims.