255 F.3d 1061 (9th Cir. 2001)
 IN RE: DEBBIE REYNOLDS HOTEL & CASINO, INC. DEBTOR. IN RE: DEBBIE REYNOLDS MANAGEMENT COMPANY, INC. DEBTOR. IN RE: DEBBIE REYNOLDS RESORTS, INC. DEBTOR. DEBBIE REYNOLDS HOTEL & CASINO, INC., A NEVADA CORPORATION; DEBBIE REYNOLDS MANAGEMENT COMPANY, INC., A NEVADA CORPORATION; DEBBIE REYNOLDS RESORTS, INC., A NEVADA CORPORATION, APPELLANTS,
v.
CALSTAR CORPORATION, INC., APPELLEE. RESORT FUNDING, INC., APPELLANT,
v.
CALSTAR CORPORATION, INC., APPELLEE.
 No. 99-17240, No. 99-17392
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted March 13, 2001--San Francisco, California
Filed July 6, 2001
 
 [Copyrighted Material Omitted]
 Bob L. Olson, Shea & Carlton, Las Vegas, Nevada, for appellant Resort Funding, Inc.
 Lenard Schwartzer, Mangels, Butler, Marmaro & Reilly, Las Vegas, Nevada, for appellant Debbie Reynolds Hotel & Casino, Inc.; Debbie Reynolds Management Company; Debbie Reynolds Resorts, Inc.
 James R. Alsup, Law Office of Federico Sayre, Newport Beach, California, for appellee Calstar Corporation.
 Appeal from the United States Bankruptcy Appellate Panel for the Ninth Circuit J. E. Ryan, Bankruptcy Judge; Christopher M. Klein, Bankruptcy Judge; Samuel L. Bufford, Bankruptcy Judge, Presiding. BAP No. 98-1862 RYKBu.
 Before: Joseph T. Sneed, Ferdinand F. Fernandez, and Andrew J. Kleinfeld, Circuit Judges.
 
 Sneed, Circuit Judge
 OPINION
 
 1
 Debtor Debbie Reynolds Hotel and Casino ("Debtor") and secured creditor Resort Funding, Inc. ("RFI") entered into a settlement agreement that provided for a $50,000 payment from RFI to Debtor's counsel pursuant to 11 U.S.C.§§ 506(c). The bankruptcy court approved the agreement. The Bankruptcy Appellate Panel ("BAP") reversed the bankruptcy court. Debtor and RFI jointly appeal the judgment of the BAP and ask this court to enforce the settlement agreement.
 
 
 2
 The BAP reversed the bankruptcy court on two grounds. First, the BAP held that Appellants' settlement agreement impermissibly abrogated the right of Appellee Calstar Corporation ("Calstar") to surcharge the secured collateral of RFI. Second, the BAP held that the bankruptcy court abused its discretion by permitting the payment of the surcharge directly to Debtor's counsel rather than into Debtor's estate to be distributed according to the priority schedule codified in 11 U.S.C. §§ 507.
 
 
 3
 We reverse the BAP and hold that the settlement agreement is valid and enforceable. Applying the recent Supreme Court decision of Hartford Underwriters Ins. Co. v. Union Planters Bank, 530 U.S. 1 (2000), we hold that Calstar has no standing to challenge the terms of the settlement agreement. We also hold that a surcharge secured pursuant to 11 U.S.C.§§ 506(c) should be distributed directly to the Debtor's counsel, whose services to the estate underlie the surcharge request.
 
 BACKGROUND
 
 4
 A. The Sale of the Debbie Reynolds Hotel and Casino
 
 
 5
 In February 1998, Debtor proposed a liquidating plan of reorganization that provided for the sale of substantially all of its assets to Central Florida Investments ("CFI") for $14,000,000. RFI supported the sale, but a committee of Debtor's unsecured creditors opposed it. Rather than approve the sale as negotiated, the bankruptcy court agreed to permit interested parties to appear at a hearing to bid to purchase Debtor's property for a sum in excess of the price negotiated with CFI.
 
 
 6
 At the close of bidding, the court awarded CFI the right to purchase the property for $15,600,000. The order accepting CFI's bid also gave CFI the right to withdraw from the transaction without penalty by May 10, 1998. After completing its due diligence, CFI exercised this right and terminated the transaction. The right to purchase the hotel then fell to Appellee Calstar for $15,500,000.
 
 
 7
 Calstar agreed to loan Debtor $150,000 to keep the hotel open while Calstar completed its due diligence prior to closing the sale. This post-petition financing was approved by the bankruptcy court on a "superpriority" basis under 11 U.S.C. §§ 364(c)(1). Calstar's superpriority loan did not alter the rights of secured creditors, but it gave Calstar the right to repayment ahead of all administrative and unsecured claims.[1] Calstar subsequently decided not to purchase the hotel. It withdrew from the transaction without penalty.
 
 
 8
 Finding itself without any prospective purchasers of the hotel, the bankruptcy court entered an order permitting the sale of Debtor's assets through public auction. In August 1998, the hotel and all related personal property were sold through public auction for $10,650,000.
 
 
 9
 B. The Settlement Agreement Between Debtor and RFI
 
 
 10
 After the sale of the hotel, but before final approval by the bankruptcy court, Debtor's counsel sought a payment out of RFI's secured collateral under the authority of 11 U.S.C. §§ 506(c). Section 506(c) provides that the"trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The payment of these "reasonable and necessary" expenses out of the secured property of a creditor is known as a surcharge.
 
 
 11
 RFI did not concede that Debtor's counsel had provided any measurable benefit to its secured collateral. Nevertheless, it entered into an agreement allowing Debtor's counsel to collect a $50,000 surcharge from its secured property. The surcharge agreement also provided that "RFI's secured and unsecured claims shall be irrevocably allowed and no debtor, administrative claimant or party in interest may: . . . (5) seek to surcharge any of RFI's collateral pursuant to 11 U.S.C. §§ 506(c)." In effect, RFI attempted to buy"closure" by agreeing to a $50,000 surcharge in exchange for assurance that there would be no further challenges to collection of its secured debt.
 
 
 12
 Calstar objected to the Settlement Agreement on two grounds. First, Calstar itself sought to surcharge RFI's secured property as repayment for the benefit provided by Calstar's $150,000 loan to Debtor in May 1998. Calstar argued that the immunizing language of the Settlement Agreement improperly foreclosed Calstar's right to seek a surcharge under 11 U.S.C. §§ 506(c). In addition, Calstar argued that because its loan to Debtor was made pursuant to 11 U.S.C. §§ 364(c)(1), it should collect ahead of Debtor's counsel. Therefore, the surcharge agreement between RFI and Debtor, whereby Debtor's counsel would collect the $50,000 payment, violated Calstar's rights as a "superpriority" creditor.
 
 
 13
 The bankruptcy court approved the surcharge/settlement agreement in its entirety. The BAP, reversing the bankruptcy court, held that the lower court abused its discretion when it approved the immunizing language of the settlement agreement without first determining whether RFI benefitted from the actions of other claimants. In addition, the BAP held that the bankruptcy court erred in permitting the distribution of the surcharge directly to Debtor's attorneys rather than to the estate. This distribution "enabled [Debtor's attorneys] to get paid on a mere administrative claim ahead of Calstar, the holder of a superpriority claim under §§ 364(c)."
 
 
 14
 Both RFI and Debtor appealed from the BAP's reversal of the bankruptcy court's approval of the settlement agreement.
 
 STANDARD OF REVIEW
 
 15
 This court reviews the bankruptcy court's approval of a proposed compromise for an abuse of discretion. Burton v. Ulrich (In re Schmitt), 215 B.R. 417, 420 (9th Cir. BAP 1997). However, both the bankruptcy court's and the BAP's interpretation of the Bankruptcy Code is reviewed de novo. In re Celebrity Home Entertainment, Inc., 210 F.3d 995, 997 (9th Cir. 2000); In re Los Angeles Int'l Airport Hotel Assocs., 106 F.3d 1479, 1480 (9th Cir. 1997). To the extent that the bankruptcy court's approval of the settlement agreement rested on an erroneous interpretation of law, it was, per se, an abuse of discretion. Koon v. United States, 518 U.S. 81, 100 (1996) ("A district court by definition abuses its discretion when it makes an error of law.").
 
 
 16
 The bankruptcy court concluded that RFI could not, as a matter of law, be surcharged under 11 U.S.C. §§ 506(c). It approved the settlement agreement on this basis. The BAP reached the opposite conclusion. Whether section 506(c) permits Calstar to surcharge RFI is a question of law subject to de novo review.
 
 DISCUSSION
 
 17
 This case presents two distinct questions arising under Section 506(c) of the Bankruptcy Code.[2] First, we must determine whether Calstar has standing to object to the secured creditor's settlement agreement with the debtor-in-possession. The agreement foreclosed Calstar from seeking to surcharge the secured collateral of RFI. Following Hartford Underwriters, we hold that Calstar had no standing to seek a surcharge pursuant to §§ 506(c). Therefore, Calstar cannot object to the agreement which prevented it from bringing a surcharge action. We reverse the BAP decision holding otherwise.
 
 
 18
 In addition, we must determine how the $50,000 in proceeds from the §§ 506(c) surcharge should be distributed. We hold that under §§ 506(c), the party that has rendered a benefit to a secured creditor is properly reimbursed for that benefit from secured collateral. We reverse the BAP on this issue as well and hold that Debtor's counsel is entitled to the $50,000 surcharge consistent with the terms of the settlement agreement.
 
 
 19
 I. Immunizing Language of the Settlement Agreement
 
 
 20
 A. Under Hartford Underwriters, Calstar lacks standing to object to the settlement agreement.
 
 
 21
 The only objection to enforcement of the settlement agreement -and the point on which the bankruptcy court and the BAP disagreed -was whether the immunizing provision of the agreement improperly abrogated Calstar's right to seek a surcharge from RFI pursuant to §§ 506(c). Hartford Underwriters makes clear that Calstar cannot, under any circumstances, seek such a surcharge because Calstar, as a superpriority claimant, has no standing to do so. Under Hartford Underwriters, therefore, the immunizing language of the settlement agreement had no legal effect. Since Calstar's objection to the agreement was based on this language, that objection cannot succeed.
 
 
 22
 In Hartford Underwriters, the Supreme Court limited standing under 11 U.S.C. §§ 506(c) to the trustee of a bankruptcy estate or -if the proceeding is held pursuant to Chapter 11 of the Bankruptcy Code -a debtor-in-possession. Id., 530 U.S. at 6 n.3; 11 U.S.C. §§ 1107(a) (in a proceeding under Chapter 11, a debtor-in-possession shall have the rights and powers of a trustee). Unsecured creditors (such as Calstar) may not seek payment for monies expended on behalf of the estate from the collateral of a secured creditor. Hartford Underwriters, 530 U.S. at 13.
 
 
 23
 Hartford Underwriters overruled North County Jeep and Renault, Inc. v. Gen. Electric Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229 (9th Cir. 1991). In In re Palomar Truck Corp., this court held that when a trustee has "no economic incentive to seek recovery under §§ 506(c)," other parties who provided a benefit to secured creditors may seek a surcharge under §§ 506(c). Id., 951 F.2d at 232. Because the present controversy arose prior to the Supreme Court's decision in Hartford Underwriters, both the bankruptcy court and the BAP relied on the holding in In re Palomar Truck Corp. Consequently, neither of the lower courts analyzed how Hartford Underwriters' standing requirement affects the disposition of this appeal. The holding of Hartford Underwriters, however, is clear and unambiguous. "The statute appears quite plain in specifying who may use §§ 506(c) -the trustee." Hartford Underwriters, 530 U.S. at 6. Because Calstar was not the trustee (or the debtor-in-possession) it could not seek a §§ 506(c) surcharge. The settlement agreement, in effect, abrogated a legal right that no longer exists. Id.
 
 
 24
 Only a party who is "directly and adversely affected pecuniarily" by an order of the bankruptcy court may appeal. To provide standing, "the order must diminish the appellant's property, increase its burdens, or detrimentally affect its rights." In re P.R.T.C. Inc., 177 F.3d 774, 777 (9th Cir. 1999). Calstar cannot show "direct and adverse" harm from the bankruptcy court's approval of the immunizing language in the settlement agreement. Consequently, Calstar has no standing to appeal this aspect of the bankruptcy court's order. Application of Hartford Underwriters to the facts of this case requires reversal of the BAP ruling.
 
 
 25
 B. Hartford Underwriters Applies Retroactively
 
 
 26
 In Harper v. Va. Dep't. of Taxation, 509 U.S. 86 (1993), the Supreme Court simplified the doctrine of retroactivity. Under Harper, "a rule of federal law, once announced and applied to the parties to the controversy, must be given full retroactive effect by all courts adjudicating federal law." 509 U.S. at 96 (citing James B. Beam Distilling Co. v. Georgia, 501 U.S. 529 (1991)). Retroactive application of Supreme Court precedent to all cases on direct review is, therefore, the general rule. The exception to this rule is quite limited. Only when the Supreme Court "reserve[s] the question whether its holding should be applied to the parties before it " can other parties also avoid retroactive application. Id . at 97.
 
 
 27
 In Hartford Underwriters, the Supreme Court applied its interpretation of §§ 506(c) to the parties then before the court. The Court affirmed the dismissal of an administrative claimant's surcharge petition because the claimant lacked standing. This holding must also apply to Calstar's appeal on direct review. Harper, 509 U.S. at 97 (Court's interpretation of federal law given full retroactive effect to all cases open on direct review); United States v. Newman, 203 F.3d 700, 701-702 (9th Cir. 2000) (civil appeal governed by retroactivity analysis of Harper).
 
 II. Distribution of the Surcharge
 
 28
 Under the priority schedule codified in 11 U.S.C.§§ 507, Calstar's loan to Debtor had priority over Debtor's counsel's claim for fees.[3] The question presented is whether a surcharge under 11 U.S.C. §§ 506(c) falls within the priority schedule of §§ 507. Appellee Calstar argues that the surcharge became part of the general assets of the estate and should be distributed according to the statutory priority schedule. Appellants, alternatively, argue that §§ 506(c) authorizes the party that provided the benefit to the secured creditor to directly receive the reimbursement from the secured collateral regardless of their priority under §§ 507.
 
 
 29
 We agree with Appellants and hold that a §§ 506(c) surcharge is not an administrative claim, but an assessment against a secured party's collateral. In re Mall At One Assoc., L.P., 187 B.R. 476, 480 (E.D. Penn. 1995). As such, it does not come out of the debtor's estate, but rather comes directly from the secured party's recovery. Consequently,§§ 506(c) expenses do not fall within the priority scheme of the Bankruptcy Code at all. These expenses "are paid first out of the proceeds of the sale, before a secured creditor is paid." United States v. Federal Deposit Insurance Corporation, 899 F.Supp. 50, 55 (D.R.I. 1995); In re Anderson, 66 B.R. 97, 99 (9th Cir. B.A.P. 1986) ("We read the Code to provide for payment of the trustee's direct costs of sale out of the proceeds of the sale before distribution to the secured creditors.").
 
 
 30
 In In re Palomar Truck Corp., this court held that the proceeds of a §§ 506(c) surcharge pass directly"to the claimant with no gain to the estate." 951 F.2d at 232. As noted above, the Supreme Court overruled In re Palomar Truck Corp. on the issue of who has standing to pursue a §§ 506(c) surcharge. The Court, however, specifically refused to decide how a surcharge recovered by the trustee should be distributed. Hartford Underwriters, 530 U.S. at 11 n.4. Consequently, we hold that this aspect of In re Palomar Truck Corp. survived Hartford Underwriters and remains the binding precedent of this Circuit.
 
 
 31
 The $50,000 surcharge secured by the debtor-in-possession through the settlement agreement should therefore be distributed directly to Debtor's counsel. The basis of the surcharge was, after all, the work of the attorneys. Had the trustee paid its counsel's legal fees prior to seeking a surcharge, the effect would be the same as if the proceeds from the surcharge were distributed directly to Debtor's counsel. Once the trustee has incurred expenses, it may be reimbursed out of secured collateral upon a showing that the expenses incurred were reasonable, necessary and beneficial to the secured creditor. In re Compton Impressions Ltd. , 217 F.3d 1256, 1262 (9th Cir. 2000). Counsel's right to the proceeds of the surcharge should not depend on a formalistic distinction between whether the debtor expended money or simply incurred debt prior to seeking the surcharge. Debtor's counsel should receive the payment to the extent of the benefit provided or, in this case, to the extent agreed to by the secured creditor.
 
 
 32
 We reject the BAP's conclusion that direct distribution of the surcharge will result in a reordering of the Bankruptcy Code's priority schedule. In re Debbie Reynolds Hotel & Casino, Inc., 238 B.R. 831, 840 (9th Cir. B.A.P 1999); See also In re JKJ Chevrolet, Inc., 26 F.3d 481, 484 (4th Cir. 1994) ("We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly.").
 
 
 33
 First, under Hartford Underwriters, only the trustee or debtor-in-possession may seek a surcharge. Therefore, in order for a party that provided a benefit to a secured creditor to receive payment for that benefit, the party must convince the trustee to seek a §§ 506(c) surcharge or get leave from the Bankruptcy Court to do so. Hartford Underwriters , 530 U.S. at 13 n.5. In many circumstances, this requirement alone will prevent unpaid administrative claimants from seeking refuge in §§ 506.
 
 
 34
 In addition, the party seeking the surcharge must prove that its expenses were reasonable, necessary and provided a quantifiable benefit to the secured creditor. In re Cascade Hydraulics and Utility Service, Inc., 815 F.2d 546, 548 (9th Cir. 1987). This is not an easy standard to meet. It is the party seeking the surcharge that has the burden of showing a "concrete" and "quantifiable" benefit. The§§ 506 recovery is limited to the amount of the benefit actually proven. In re Compton Impressions, 217 F.3d at 1261. Because a party seeking a surcharge faces an onerous burden of proof, it is unlikely that creditors will use this provision when any other provision of the Code is available. Furthermore, because the amount of a surcharge is limited to the amount of the benefit and must be proven with specificity, the deserving party is easily ascertainable.
 
 
 35
 Debtor's counsel avoided these hurdles in the present case by procuring the agreement of the secured creditor to pay the surcharge.[4] In return for the surcharge, RFI received contractual assurances that no other party would seek payment from its secured collateral. After Hartford Underwriters, it is unlikely that a secured creditor would be willing to enter into such an agreement. The assurances that constituted Debtor's consideration have no legal effect. RFI agreed to pay $50,000 and received nothing in return. Consequently, the underlying facts of this controversy are unlikely to repeat. There is, therefore, little concern that unsecured creditors can avoid the dictates of the Bankruptcy Code by colluding with secured creditors for the payment of a §§ 506 surcharge. There is no incentive for secured creditors to enter into such agreements.
 
 CONCLUSION
 
 36
 Hartford Underwriters applies retroactively to this appeal. Under Hartford Underwriters, Calstar has no standing to seek a surcharge from RFI. Consequently, the immunizing langauge of the settlement agreement did not alter the legal rights of Calstar and was properly approved by the bankruptcy court. The BAP decision disapproving the settlement agreement is reversed. In addition, 11 U.S.C. §§ 506(c) authorizes the payment of the proceeds from a surcharge directly to the party who provided the quantifiable benefit to the secured collateral. The BAP's order directing these proceeds to be distributed according to the priority schedule of 11 U.S.C. §§ 507 is also reversed.
 
 
 37
 REVERSED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 11 U.S.C. §§ 364 provides in pertinent part: (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--
 (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title.
 
 
 [2]
 11 U.S.C. §§ 506(c) provides:
 The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.
 
 
 [3]
 Compensation for professionals is an administrative expense as defined in 11 U.S.C. §§ 503(b)(2). Calstar's loan was made "with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title." 11 U.S.C. §§ 364(c)(1).
 
 
 [4]
 The fact that RFI consented to a surcharge in favor of Debtor's counsel supports a finding that the surcharge was properly distributed. William Collier, Collier on Bankruptcy ¶¶ 506.05[6] (15th Ed. Revised 2001) ("If the holder of a secured claim expressly consents to the payment of a specific administrative claim from its collateral, then the secured creditor's consent may be enforceable to ensure payment of the claim of the administrative claimant from the collateral.").