**NOT FOR PUBLICATION**

APR 14 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT



# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-19-1234-BTaF |
| ARTEM KOSHKALDA, | Bk. No. 18-30016-HLB |
| Debtor. | |
| ARTEM KOSHKALDA, | |
| Appellant, | |
| v. | MEMORANDUM[*] |
| E. LYNN SCHOENMANN, Chapter 7 Trustee; 5 ARCH FUNDING CORPORATION; 5 AIF WILLOW, LLC; 5AF JUNIPER LLC, | |
| Appellees. | |

Argued and Submitted on March 26, 2020

Filed – April 14, 2020

Appeal from the United States Bankruptcy Court
for the Northern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances: Appellant Artem Koshkalda argued pro se; Michael A. Sweet and Jack Praetzellis of Fox Rothschild LLP on brief for E. Lynn Schoenmann, Chapter 7 Trustee; Stephen J. Kottmeier and Monique D. Jewett-Brewster of Hopkins & Carley on brief for 5 Arch Funding Corp., 5 AIF Willow, LLC, and 5 AF Juniper LLC.

Before: BRAND, TAYLOR, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Appellant Artem Koshkalda appeals an order approving the chapter 7[1] trustee's compromise with 5 Arch Funding Corp., 5AIF Willow, LLC, and 5AF Juniper LLC (collectively, "5 Arch") — the lender that provided funding for real properties Koshkalda owned prior to his bankruptcy filing. Because Koshkalda has failed to establish standing to appeal the compromise order, we DISMISS.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Prepetition events**

In late 2016, 5 Arch extended seven "fix and flip" loans to Koshkalda totaling approximately $3,685,000. The loans were secured by deeds of trust on seven real properties. When Koshkalda failed to make the payments,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

5 Arch filed nonjudicial foreclosure proceedings against each of the seven properties.

## B.    Postpetition events

Prior to any foreclosure sale, Koshkalda filed a chapter 11 bankruptcy case on January 5, 2018. Initially, he did not schedule any claims against 5 Arch. However, in a later amended Schedule A/B, he listed claims for "breach of contract and potentially other claims related to 5 Arch's failure and refusal to provide Debtor and his companies with loan payoff amounts."

Koshkalda's case was converted to chapter 7. E. Lynn Schoenmann was appointed as the trustee ("Trustee").

### 1.    Koshkalda's abandonment motion

Thereafter, Koshkalda filed a motion to compel Trustee to abandon the estate's claims against 5 Arch. As Koshkalda explained, 5 Arch began to charge an 18% default interest rate (double the original contract rate of 9%) on the seven loans in September 2017. Wanting to avoid this increased rate and sell the properties, Koshkalda requested the payoff amounts for each loan. 5 Arch would not provide the payoff amounts. Koshkalda argued that, by failing to provide the payoff amounts, 5 Arch breached the contracts. Koshkalda argued that the claims against 5 Arch were burdensome or of inconsequential value to the estate and should be abandoned by Trustee.

Trustee opposed the abandonment motion, arguing that the claims against 5 Arch were valuable to the estate. She believed that the 18% default

3

interest rate was an unenforceable penalty under Cal. Civ. Code § 1671(b). Trustee noted that she was in negotiations with 5 Arch and that, if the parties could not resolve the issue, she might proceed with litigation. The bankruptcy court denied Koshkalda's abandonment motion.

## 2. Trustee's objection to 5 Arch's proof of claim

Meanwhile, 5 Arch filed a $3.964 million secured proof of claim. In her objection to the claim, Trustee explained that the seven properties associated with the 5 Arch loans had been sold — she sold five, and 5 Arch sold two at auction. Trustee objected to the portion of 5 Arch's claim attributable to default interest, about $275,000, arguing that it was an impermissible penalty and that the amounts of default interest 5 Arch received from the five properties she sold should be disgorged to the estate.

5 Arch opposed Trustee's claim objection, arguing that her position on the default interest was without evidentiary support, substantive legal analysis, or analysis of the specific terms of the default interest provision. 5 Arch confirmed that it received about $275,000 in default interest from proceeds of the properties sold by Trustee, but argued that this did not take into account the deficiencies incurred on the two properties 5 Arch sold at a loss at auction.

The bankruptcy court ordered the parties to file further briefing and set the matter for hearing. Trustee submitted a declaration from her accountant supporting her position that the default interest was an unenforceable

penalty. She further argued that 5 Arch's refusal to provide Koshkalda with the requested payoff amounts to "stop the bleeding" on the default interest accrual was "particularly revealing" and evidenced that the rate was fundamentally punitive. 5 Arch countered that it could not provide the payoff amounts because of an asset freeze order in place against Koshkalda at the time.

Just before the hearing, the parties informed the bankruptcy court that they had resolved their dispute and that a compromise motion would follow.

### 3. Trustee's compromise with 5 Arch

Trustee then filed her motion to compromise with 5 Arch. To settle the dispute over the default interest:  (a) Trustee would withdraw her objection to 5 Arch's proof of claim with prejudice; (b) 5 Arch would withdraw its proof of claim with prejudice; (c) Trustee would retain $29,842.00 in rent that was the cash collateral of 5 Arch; (d) 5 Arch would retain all funds it received from Trustee's sale of the five properties, including the paid default interest; (e) Trustee would release the estate's claims against 5 Arch, including the default interest claim and the payoff demand claim; and (f) 5 Arch would release any and all claims it may have against the estate arising out of the loans or set forth in the proof of claim. Despite the parties' earlier statements that 5 Arch had been paid approximately $275,000 in default interest, Trustee now asserted that out of the $260,000 in *total* interest paid to 5 Arch, the *default* interest portion of that was about $130,000.

Trustee argued that the compromise was reasonable, fair and equitable, and satisfied the factors set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377 (9th Cir. 1986). She argued that her likelihood of success in litigating the default interest issue weighed "heavily" in favor of the settlement, as there were competing claims and equities on both sides. Since there was no difficulty in collection, Trustee argued that this factor weighed against the settlement.

As for the complexity of the litigation, expense, and delay, Trustee argued that it weighed in favor of the settlement. Litigation would likely require expert analysis and significant discovery of the 5 Arch business model and plan to appropriately evaluate the Cal. Civ. Code § 1671(b) issues. Indeed, the parties had already engaged in that analysis, to some degree, with experts. In Trustee's opinion, further discovery and analysis would be expensive and uncertain. Lastly, Trustee argued that the settlement was in the best interest of creditors. It would provide the estate with $29,842.00 in cash, without having to engage in time-consuming and potentially expensive and uncertain litigation.

Koshkalda opposed the compromise motion, arguing that the settlement was neither fair nor equitable, nor was it supported by an adequate factual foundation. Koshkalda argued that Trustee knew nothing about the estate's claims against 5 Arch, namely the payoff demand claim and the extent of the damages he suffered by the accrual of default interest when

6

5 Arch refused to provide the loan payoff amounts. Thus, settlement of the claims for under $30,000 was neither fair nor equitable. Koshkalda argued that a settlement amount of at least $200,000 would be more appropriate.

In response, Trustee argued that Koshkalda lacked standing to object to the compromise; he had not submitted any evidence to show a "sufficient possibility" of a surplus estate that would give him standing. Trustee also disputed Koshkalda's assertion that she knew nothing about his claims against 5 Arch. As for Koshkalda's argument that 5 Arch breached the contracts by failing to provide the loan payoff amounts and thus all default interest should be forfeited, Trustee argued that Koshkalda: (a) cited no state law or contract term permitting the court to disallow the default interest because 5 Arch refused to supply payoff demands; (b) identified no potential cause of action against 5 Arch for this alleged injurious conduct; and (c) cited no law for the proposition that 5 Arch owed him a duty to supply payoff demands when an asset freeze order prohibited him from transferring or encumbering his real property. In summary, Trustee argued that Koshkalda's suggestion that she expend further resources on chasing a phantom recovery from 5 Arch should be rejected.

### 4. Ruling on the motion to compromise

The bankruptcy court entered an oral ruling approving the compromise, finding that it was fair and equitable and a proper exercise of Trustee's business judgment. In reviewing the four factors under *A & C*

*Properties,* the court noted that determining the propriety of default rate interest requires a "multi-factor test and weighing the equities of a particular situation," and that "trying a case that involves that kind of dispute takes time and it soaks up resources." Given the complexities of the litigation, the court found that the first factor weighed heavily in favor of the settlement. Because there were no difficulties with collection, the court found that the second factor weighed against the settlement. The court found that both the third and fourth factors weighed in favor of the settlement. Litigation would require expert analysis, significant discovery, and a "complicated trial." Further, the paramount interest of creditors was best served with the settlement; the estate was getting approximately $30,000 in cash without having to incur additional expenses, when the maximum possible recovery was about $130,000.

The bankruptcy court entered an order approving the compromise on September 10, 2019 ("Compromise Order"). Koshkalda timely filed an appeal of the Compromise Order on September 19, 2019.

On September 24, 2019, Koshkalda filed a motion to alter or amend the Compromise Order, which Trustee opposed. The bankruptcy court denied the motion.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), and we have jurisdiction under 28 U.S.C. § 158 over the

8

Compromise Order, subject to our standing discussion below.

We do not, however, have jurisdiction to review the order denying the motion to alter or amend the Compromise Order, because Koshkalda did not file a notice of appeal or an amended notice of appeal for that order. As the governing Rule specifies:

> If a party intends to challenge an order disposing of any motion listed in subdivision (b)(1) [including motions under Rules 9023 and 9024] . . . the party must file a notice of appeal or an amended notice of appeal. The notice or amended notice must . . . be filed within the time prescribed by this rule, measured from the entry of the order disposing of the last such remaining motion.

Rule 8002(b)(3). An appellant's failure to comply with the appeal filing deadlines set forth in Rule 8002 typically deprives us of jurisdiction. *Olomi v. Tukhi (In re Tukhi)*, 568 B.R. 107, 112 (9th Cir. BAP 2017) (citing *Slimick v. Silva (In re Slimick)*, 928 F.2d 304, 306 (9th Cir. 1990)). And the bankruptcy court made no "enhanced findings" or any "new factual determinations" in the order denying the motion to alter or amend in support of its original ruling that we have jurisdiction to review. *See id.*

### III. ISSUES

1.  Does Koshkalda have standing to appeal the Compromise Order?

2.  Did the bankruptcy court abuse its discretion in approving the compromise?

### IV. STANDARDS OF REVIEW

We review the issue of appellant standing de novo. *Brown v. Sobczak (In*

*re Sobczak)*, 369 B.R. 512, 516 (9th Cir. BAP 2007). Whether an appellant is a "person aggrieved" and thus has standing to appeal is a question of fact. *Duckor Spradling & Metzger v. Baum Tr. (In re P.R.T.C., Inc.)*, 177 F.3d 774, 777 (9th Cir. 1999).

The bankruptcy court's approval of a compromise is reviewed for abuse of discretion. *Debbie Reynolds Hotel & Casino, Inc. v. Calstar Corp. (In re Debbie Reynolds Hotel & Casino, Inc.)*, 255 F.3d 1061, 1065 (9th Cir. 2001). A bankruptcy court abuses its discretion if it applies an incorrect legal standard, or if its factual findings are illogical, implausible or without support from evidence in the record. *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).

## V. DISCUSSION

Trustee argues that Koshkalda lacks standing to appeal the Compromise Order, because he has not shown a "sufficient possibility" of a surplus to give him a pecuniary interest. *Heath v. Am. Express Travel Related Servs. Co. (In re Heath)*, 331 B.R. 424, 429 (9th Cir. BAP 2005). In response, Koshkalda argues that he has a pecuniary interest in the settlement and, hence, has standing, because he has $1.4 million in federal tax debt that is nondischargeable. Koshkalda cites to no authority or anything in the record that supports his argument. Koshkalda has the burden to establish his standing for this appeal. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 807 F.3d 1031, 1043 (9th Cir. 2015).

10

Bankruptcy appellate standing is limited to those persons who can demonstrate that they are directly and adversely affected pecuniarily by an order of the bankruptcy court. *Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). A party asserting standing must demonstrate that the order either diminishes his property, increases his burdens, or detrimentally affects his rights. *Id.* The pecuniary interest requirement extends to a debtor's objections regarding proposed settlements. *Estillore v. Manfredo (In re Estillore)*, BAP Nos. EC-16-1147-JuTaB and EC-16-1151-JuTaB, 2017 WL 1371295, at *4 (9th Cir. BAP Apr. 12, 2017) (citing *In re Rake*, 363 B.R. 146, 151 (Bankr. D. Idaho 2007)).

A chapter 7 debtor ordinarily lacks standing to challenge orders affecting the assets of the estate unless there is likely to be a surplus after bankruptcy. *In re P.R.T.C., Inc.*, 177 F.3d at 778 n.2. A "hopelessly insolvent debtor does not have standing to appeal orders affecting the size of the estate," because those orders "would not diminish the debtor's property, increase his burdens, or detrimentally affect his rights." *In re Fondiller*, 707 F.2d at 442.

Koshkalda has not shown any basis for us to conclude that this is a surplus estate. In fact, he has made statements to the contrary. And, given his extensive and unending litigation against Trustee and her professionals, it appears that any hope for a surplus, if there ever was one, is all but gone. In short, Koshkalda has not demonstrated any pecuniary interest in the

Compromise Order to give him standing. He has not shown how any money, whether it be $30,000 or $130,000, would reduce his alleged nondischargeable tax debt. Accordingly, this appeal must be dismissed.

Even if Koshkalda had standing, we would affirm the Compromise Order. The procedural history of the case demonstrates that, contrary to Koshkalda's argument, Trustee was fully informed about the settled claims. The bankruptcy court applied the correct law, namely the *A & C Properties* factors, carefully analyzed and weighed these factors, and concluded that they weighed in favor of the settlement. The record supports the court's decision to approve the compromise. We perceive no abuse of discretion.

## VI. CONCLUSION

For the reasons set forth above, we DISMISS the appeal for lack of standing.